7956

STATE v. BRIGHT.

1. UNDER THE PLEA OF SELF-DEFENSE, EVIDENCE as to hostile attitude of deceased toward defendant and of unreasonable and general threats and as to acts done immediately before the homicide is admissible.

2. CHARGE.—In expressing his opinion of the competency of threats and of actions of deceased toward his wife and of the conduct of the

case by defendant's attorneys, the Judge violated the constitutional inhibition as to charging on the facts, but as the jury found defendant guilty of manslaughter only, the error is harmless.

3. IBID.—After stating to the jury their responsible position in a murder case, saying, On the other hand the blood of a fellowman cries out from the ground, a civilized society is demanding protection at our hands today. Every consideration should be extended to the .accused, but it should not be forgotten that there are other lives which may be taken and which probably will be taken or spared, according as we discharge our duties here today, is a charge on the facts.

4. SELF-DEFENSE.—One who kills another makes out the plea of self-defense if he proves by the preponderance of the evidence that when the fatal shot was fired he believed that he was in danger of death or serious bodily harm from his assailant and that it was necessary for him to shoot as he did to save himself from death or serious bodily harm, and that the circumstances were such as to induce that belief and lead to that action by a person of ordinary reason and firmness.

Before ALDRICH, J., Spartanburg, October term, 1910. Reversed.

Indictment against Travis Bright.   Defendant appeals.

*Messrs. Butler & Hall, H. K. Osborne* and *R. A. Dobson,* for appellant, cite: *Competency of threats and acts:* 86 S. C. 383; 73 S. C. 279; 74 S. C. 140.   *Charge:* 81 S. C. 378.

*Solicitor J. C. Otts,* contra, cites: *As to remarks of Judge:* 61 S. C. 17; 71 S. C. 136; 87 S. C. 527.   *Charge on facts:* 47 S. C. 519; 36 S. C. 544; 40 S. C. 37.   *Admission of other evidence cures error:* 86 S. C. 383; 56 S. C. 431.

July 7, 1911.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   In March, 1910, the defendant Travis Bright shot and killed his father Hose Bright.   On his trial in the Court of General Sessions for Cherokee county he set up the plea of self-defense and was convicted of manslaughter.

The case is singular in that there is little if any material difference in the testimony of the witnesses for the State and for the defense. Hose Bright was a quiet and amiable man when sober, but aggressive and violent when drinking. For a day or two before his death he had been on a spree, and had threatened and struck his wife and the defendant. On the day of the homicide his wife, after being struck by him, fled from him, and in her flight went to the house of N. P. Smart, where the defendant was lying in bed somewhat unwell. Mrs. Bright did not stop in the room where defendant was, but as she passed through cried out: "O Lordy, don't let him get to me. He is going to kill me." The defendant testified that he then got out of bed, took a pistol from a bureau drawer and sat down in a chair, holding the pistol in his lap. The following account of the defendant of the killing is in agreement with that of the other witnesses: "Did you hear any noise from your father out there? No, sir. I didn't know he was out there, and he says, when he came in he commenced cursing me and he says to me, 'I want what you owe me.' I says, 'All right, pa, I will give it to you this morning,' and I says, 'Pa, I want what you owe me.' He says, 'Owe you—you God— I don't owe you anything.' And he struck at me and I threw up my hand and knocked the lick off, and the next time he struck at me right along there (indicating) and knocked me over in the chair. And as I rose I shot him and he threw his hands so and says, and he staggered and says, 'Lordy, Trate, you have killed me.' And I says to him, 'Pa, I had it to do.'"

The defendant further testified that his father threatened to kill him but struck with his hand only, and he saw no weapon at that time, though he had seen a knife in his father's hand on the same evening at defendant's own house.

We think consideration of the exceptions in detail not necessary to the decision of the appeal. The exceptions assigning error in the exclusion of testimony as to the hostile

attitude and unreasonable and general threats of the deceased are not well founded. Such testimony as to acts done immediately before the homicide tending to show the mental attitude of the deceased is clearly admissible where the plea is self-defense. *State* v. *Smith,* 12 Rich. 430; *State* v. *Thrailkill,* 71 S. C. 140, 50 S. E. 551; *State* v. *Miller,* 73 S. C. 279, 53 S. E. 426; *State* v. *Springfield,* 86 S. C. 383, 68 S. E. 563. It is true the Circuit Judge did express his opinion against the admission of testimony as to overt acts of the deceased tending to show his vicious humor, but the record shows that enough evidence on this subject was admitted to give the jury ample information on the question.

In expressing his opinion as to the competency of evidence of threats and violence of the deceased towards his wife before the homicide, the Circuit Judge said with respect to an objection by the solicitor: "I don't see why you object to that, because he is going straight on proving malice on the part of that boy." Again on the same subject he said to defendant's counsel at different times: "There is no use in your asking me that question. You are perfectly familiar with the rules. You know you are getting on unfortunate ground when you try to set up what took place between the deceased and his wife, out of the presence of the defendant, because if you are allowed to show that, you would show malice on his part."

"I want counsel to understand the trend that this examination has been taking all along will make it necessary for me to charge that jury, when I come to charge them, that if the defendant, in shooting his father that night, was influenced by any ill treatment of his mother previous to the time of the shooting, that that is malice; so far from being any cause of justification, it goes to make out the crime of murder."

"It can serve no possible good purpose whatever under the charge I am going to make to that jury; I mean just what I am telling you. His duty was to have gone to a

peace officer and have him bound over if he was going to injure his mother; not to kill him for it; and I hate to see a man prejudiced in the way he is being done in the view of the law that I entertain and shall present to that jury."

Taken together, these remarks expressed a positive opinion of the Circuit Judge that the evidence which was offered by the defendant in support of his plea of self-defense and much of which was admitted, tended to prove that the homicide was committed with malice. The question whether the killing was malicious being a vital one in the case, the remarks of the Judge were in violation of the Constitution under the rule laid down in *Willis* v. *Telegraph Co.,* 73 S. C. 379, 53 S. E. 639; *State* v. *Arnold,* 80 S. C. 383, 61 S. E. 891, and *Latimer* v. *General Electric Co.,* 81 S. C. 374, 62 S. E. 438. It is to be observed, however, that the expression of the opinion of the Judge related to the element of malice, and the jury by the verdict of manslaughter found for the defendant on the issue of malice. For this reason the error is not available to the defendant as a ground of reversal. *State* v. *Robertson,* 54 S. C. 147, 31 S. E. 868.

There are numerous exceptions to the charge, but we think all of them except two have been eliminated by the verdict for manslaughter instead of murder, or are based on too great refinement of criticism. The conclusion is unavoidable, however, that there must be a new trial for two errors committed in the charge.

The following instruction was given to the jury: "There is nothing in the whole range of human experience that is more solemn, more sacred, or more important than the trial upon which we are now engaged; the issue involved in this proceeding is the life or the death of a fellow man, a power, except in the single instance of a case like this, which should reside only in the hands of God. *On the other hand the blood of a fellow man cries out from the ground, a civilized society is demanding protection at our hands today.* Every consideration should be extended to

the accused, but at the same time it should not be forgotten that *there are other lives which may be taken and which probably will be taken or spared, according as we discharge our duties here today,* and we can only discharge the sacred responsibilities resting upon us by approaching the performance of our duties soberly, discreetly, and in the fear of God." The portion of this instruction which we have italicized could not fail to convey to the jury the impression that the presiding Judge was of the opinion that the duty of the jury required them to find such a verdict as would prevent other lives being taken, that a verdict in favor of defendant would probably result in the taking of other lives, and that civilized society demanded protection against such an act as the defendant had committed. The right of the defendant was to have the jury determine primarily whether he killed his father feloniously or in self-defense, without respect to the effect of their determination in producing or preventing other crimes, or the effect of their verdict on society in any other respect. It is perfectly proper for a Circuit Judge to state to a jury their duty to society to bring in a verdict of guilty if they are convinced of the guilt of the accused, but an exhortation to protect society should always be predicated on the jury's conviction of guilt. We are unable to escape the conclusion that the charge on this point was in violation of the section of the Constitution which prohibits a Circuit Judge from charging in respect to matters of fact.

The Court correctly charged: "Where one takes the life of another to save his own life or to save himself from serious bodily harm, he being without fault in bringing on the difficulty and having no other reasonable means of escape but to take the life of his assailant, that is justifiable self-defense." The jury were also correctly charged that self-defense is based on necessity. But the fatal defect in the charge on this point was the failure to instruct the jury in the general charge or in response to the request of defendant's counsel, that one who kills another makes out the plea

of self-defense if he proves by the preponderance of the evidence that when the fatal shot was fired the defendant believed that he was in danger of death or serious bodily harm from his assailant and that it was necessary for him to shoot as he did to save himself from death or serious bodily harm, and that the circumstances were such as to induce that belief and lead to that action by a person of ordinary reason and firmness.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and the cause be remanded to that Court for a new trial.