14332

LUSK v. STATE HIGHWAY DEPARTMENT
MONROE v. SAME

(186 S. E., 786)

102

Before Sease, J., Greenville, November, 1935.

*Messrs. John M. Daniel, Attorney General, J. Ive'y Humphrey,* and *M. J. Hough, Assistant Attorneys General* and *Blythe & Bonham,* for appellant,

*Messrs. J. Robt. Martin* and *J. Robt. Martin, Jr.,* for respondents,

July 14, 1936.

The opinion of the Court was delivered by MR JUSTICE BAKER.

These two cases arose out of the same circumstances, were tried together in the Circuit Court, and come to this Court as one record. We shall therefore, herein, refer to both plaintiffs-respondents as respondent.

The action was brought under Section 5887, Code of 1932, and grew out of an accident resulting in the fatal injury of respondent's intestate, and which occurred on a state highway on February 18, 1934.

Late Saturday night, or about 12:30 a. m., February 18, 1934, five young men, included in that number being the two young men for whose deaths these actions were brought, left Honea Path, and went to a tourist cabin camp in or

near the Town of Princeton, a distance of about eight miles, for the purpose of engaging in a poker game. The car used to travel in was a Pontiac coupé, owned and driven by a Mr. Greer. They carried with them a half-gallon jar of liquor and spent the remainder of the night, or, that is, until practically daybreak, playing poker and drinking liquor. On the return trip from Princeton to the place of the accident, three of the men occupied the seat, a fourth sat in the lap of one of the men on the seat, and the fifth, a young man by the name of Black, the only survivor, laid down upon the wide place at the back of the seat intended for the purpose of placing baggage. When Greer, the owner and driver of the car, reached the top-soil road, leaving Highway No. 25, in the direction of Honea Path, this top-soil road being the direct road between said towns, and being under the supervision, control, and management of appellant, he commenced to travel at a high and reckless rate of speed, against which other members of the party protested to no avail. The road was downgrade in the direction they were traveling, and particularly as it neared the point of accident, where there was a sharp curve; but there were several sharp curves along the route of the road. The car was being driven at a speed of between fifty-five and sixty miles an hour as it approached and reached the curve at which the accident took place, and at this point skidded off the road, traveled through the air for several feet, and struck a large tree five and one-half to six feet from the ground, with fatal results as aforesaid. At this curve and to the right of the road in the direction in which the car was traveling, that is, going from Princeton to Honea Path, is a mound or hill of earth and rock, and to the left a precipice of the depth of thirty feet. It was over and into this precipice that the car skidded or was driven.

Respondent bases her cause of action upon alleged defects in the state highway and because of alleged negligent repair of the said highway.

Respondent's printed brief sets forth the delicts as follows:

"(1) Scraping from outer edge to center, causing incline to precipice.

"(2) Placing and allowing loose sand and gravel on road oval shaped and inclined to precipice, causing skidding.

"(3) Maintaining dangerous abrupt curve on heavy down grade pointing to 30-foot precipice without guard rails or adequate notice to the traveling public.

"(4) Allowing 30-foot precipice to remain open at side of highway without light (such as reflectors) or warning.

"(5) Negligence in maintaining highway higher on inside of curve and lower on outside of curve, making road inclined to precipice instead of inclined to inner side of curve."

But as stated in appellant's printed brief, the particulars in which these delicts are charged, freed from repetition and rhetorical verbiage, are: "That the road was scraped from each side to the center, so as to produce a turtle-back effect, and thus incline the road to slope towards a thirty-foot precipice along which the road ran; that loose sand was allowed to accumulate on the road; that adequate signs of a sharp curve were not provided and that no planks, guard rails or warning signs were placed along said precipice."

The answer of appellant, in addition to a general denial, pleaded that respondent's intestate was engaged in a common enterprise with the driver of the automobile in which he was riding and in company with four others, all crowded in a coupé automobile, were traveling along said highway at a negligent, reckless, and unlawful rate of speed, and that his death was due to his own negligence and the negligence of the driver of the automobile, and not to any negligence on the part of appellant.

The exceptions do not raise any question if respondent's intestate was engaged in a joint or common enterprise with the driver of the car. The trial Judge apparently charged

correctly the law as laid down in this state as to what constitutes a common or joint enterprise.

The leading cases in this State dealing with the subject are *Bober v. Southern Ry. Co.,* 151 S. C., 459, 149 S. E., 257, and *Key v. Carolina & N. W. Railway Co.,* 165 S. C., 43, 162 S. E., 582.

It is unnecessary to discuss the fact of these cases or other cases in this State on the same point. It is sufficient to state that our Court heretofore has approved the general rule that negligence of the driver of a motor vehicle cannot be imputed to a person riding in the car unless such person controls the driver or had the right to do so. This means that the Court has in effect limited the doctrine to cases where the driver was an agent or servant of the person riding in the automobile. It is difficult to understand the logic of the decisions which have limited the defense of common or joint enterprise to such a narrow sphere.

It is the view of the writer of this opinion that where two or more persons plan a trip with a common purpose of pleasure or profit, and are familiar with the conditions which obtain or may obtain in connection with the trip, and with the means of transportation that will be employed, and with the person who will have control of the vehicle in which they are riding, and voluntarily take the trip, knowing the dangers and hazards that may be incident thereto, they are engaged in a joint enterprise, and the negligence of the person in control of the vehicle is and should be imputed to each person engaging upon the trip and riding in the vehicle used.

Some Courts have held that the negligence of the driver under the conditions aforementioned is imputable to those riding in the vehicle where each joins in sharing the expense, but the writer hereof cannot see that this adds to the nature of the enterprise, or makes it more of a common enterprise than it would otherwise be under the facts and circumstances aforementioned.

We realize that our view of what constitutes a common or joint enterprise as hereinabove set forth does not comport with the majority of the decisions, but we are convinced that it is supported by logic and reason. We also realize that what we have said on the subject is *obiter dictum,* and the writer assumes the responsibility therefor.

At the conclusion of testimony in behalf of respondent, appellant moved for a nonsuit, which motion was refused. At the conclusion of all of the testimony, appellant moved for a directed verdict, which motion was also refused.

Appellant comes to this Court on eighteen exceptions, relating to the admissibility of testimony, statements and comments of the trial Judge in passing upon the relevancy and admissibility of testimony objected to, his failure to grant the motions for nonsuit and directed verdict, and his charge to the jury.

The motions for nonsuit and directed verdict were based upon the following grounds:

"1st. There is no evidence of actionable negligence on the part of the defendant.

"2nd. (Which is included in the first place, but merely amplifies it.) Even if there was any negligence on the part of the defendant has been proved (proven?), there is no evidence that the negligence proven was the proximate cause of the death of the plaintiffs.

"3rd. The testimony admits of no other inference than that such negligence was not the proximate cause of the death.

"4th. That plaintiff has failed to show, as the Statute requires him to show, that the death of his intestate was not due to his own contributory negligence.

"5th. The evidence is susceptible of no other reasonable inference than that the death of plaintiff's intestate was the proximate result of the negligence in the driving of the automobile in which he was riding."

Appellant's Exceptions 1 and 2, relating to the refusal of

the trial Judge to strike from the record the testimony of plaintiff's witness James A. Cox, who, on cross examination, stated that he had come near overturning his automobile at a point below the curve at which the accident occurred and the remarks of the trial Judge in the presence of the jury, will be considered together. On cross examination of the witness Cox, he was asked if traveling that road going towards Honea Path around the curve at which it is said the car (the car in which respondent's intestate was riding) started to skidding off, if there was any reason why a person driving an automobile could not round that curve without getting anywhere near the precipice. The witness first answered: "I tried it, I liked to got off there." Upon further cross examination, it developed that the place Mr. Cox was speaking of was at another curve or a continuation of the same curve about one hundred feet in the direction of Honea Path from the point the accident occurred. Immediately following the statement of the witness that he had not been referring to the point of the accident, attorneys for appellant moved to strike from the record this testimony on the ground that the answer was not in response to the question asked and was irrelevant and prejudicial. In passing upon the motion to strike this testimony from the record, the trial Judge used this language: "* * * He said it was the distance of this Court Room and I think it is closely enough connected for the jury to pass on it; a curve is a curve; you know it ain't twenty feet curve, they are one hundred and fifty and two hundred feet curves."

Ordinarily the admissibility of testimony is largely in the discretion of the trial Judge, but if testimony is clearly inadmissible and prejudicial to the opposing side, it amounts to a legal abuse of discretion to permit such testimony.

The reply of this witness was to a direct question if at the point of the accident he had ever encountered any trouble in driving around this curve at a reason-

able speed, and the witness, instead of answering the direct question, volunteered information as to trouble had at another point. When every delict charged against appellant was at this immediate point in the road, we are constrained to hold that the testimony of this witness with reference to another point in the road was inadmissible, and the trial Judge erred in not striking out such testimony on motion of appellant.

Again the remarks of the Court magnified the error and came so near to being an expression of opinion as to the facts of the case as to be equivalent to a charge on the facts. Therefore, these exceptions are sustained.

Exception 3 relates to the remarks of the Court while passing upon the admissibility of the testimony by the appellant's witness Humbert, as to the state of intoxication of the driver of the car. Just a short while before making the remark hereafter referred to and during the examination of the witness Humbert, the Court had ruled that it was a question for the jury to decide if respondent's intestate was guilty of negligence by riding with a man who was drunk. After the witness had described the conduct of the driver of the car just before the car left the camp at Princeton and a short while prior to the accident, appellant's counsel sought permission of the trial Judge to ask the witness whether or not in his (the witness's) opinion, he thought the man (the driver of the car) was a safe driver, to which the Court replied: "You know a man can drive a car safe when he is drunk, for that matter, I have seen them do it, but I will hear you on that, Mr. Martin, having given the circumstances and the facts now can't he give an opinion."

The appellant had pleaded contributory negligence on the part of respondent's intestate, but aside from this it was unnecessary for appellant, in a case brought under the statute allowing appellant to be sued, to plead this defense,

because it was incumbent upon respondent to affirmatively show that her intestate was free from contributory negligence. It was, therefore, one of the vital issues in the case, and when the trial Judge made the above remark, it was highly prejudicial to appellant and was equivalent to a charge on the facts.

Exception 4 alleges error on the part of the Court in commenting on the testimony of the same witness Humbert, who had given as a reason why he thought Greer, the driver of the car, was drunk, was that Greer had been talking and arguing throughout the night, when the Court said: "I think that is natural over a poker game." What we have said as to Exception 3 is applicable to this exception, because the remark by the trial Judge amounted to an expression of opinion upon the facts of the case, was equivalent to a charge upon the facts, and certainly tended to weaken the force of the testimony of this witness. Exceptions 3 and 4 are sustained.

As authority for sustaining Exception 2, and especially Exceptions 3 and 4, see cases of *Latimer v. General Electric Co.*, 81 S. C., 374, 62 S. E., 438; *State v. Bright*, 89 S. C., 228, 71 S. E., 821; *State v. Turner*, 117 S. C., 470, 109 S. E., 119; *State v. Barfield*, 128 S. C., 384, 122 S. E., 856; *Sumter Trust Co. et al. v. Holman*, 134 S. C., 412, 132 S. E., 811; *Enlee v. Seaboard Air Line Ry.*, 110 S. C., 137, 96 S. E., 490, and *Lorick & Lowrance v. Walker & Co.*, 147 S. C., 178, 145 S. E., 33, quoting from *Powers v. Rawls*, 119 S. C., 134, 112 S. E., 78, 83. In the case of *Powers v. Rawls, supra,* we find and quote with approval the following: "For an illuminating discussion of the constitutional limitations imposed upon the discretion of Judges by the provisions of Section 26, Art. 4, of the Constitution of 1868, and of Section 26, Art. 5, of the Constitution of 1895, reference may be had to what may now be justly appraised as a judicial classic, the opinion of this Court delivered by Hon. W. C. Benet, Acting Associate Justice,

in the case of *Norris v. Clinkscales,* 47 S. C., 488, 25 S. E., 797. It is sufficient for our purposes to observe that, not only must the formal charge to the jury be kept free from any statement of facts in issue or expression as to the weight and sufficiency of evidence (*Norris v. Clinkscales, supra; Burnett v. Crawford,* 50 S. C., 161, 27 S. E., 645, and cases following), but it has been frequently held that a trial Judge should not by the interrogation of witnesses, by remarks in ruling upon evidence offered, or by comment upon the facts iñ relation to interlocutory motions, indicate opinions or express views reasonably calculated to influence the jury in deciding a material issue of fact. *Willis v. Telegraph Co.,* 73 S. C., 379, 53 S. E., 639; *Latimer v. Electric Co.,* 81 S. C. [374], 379, 62 S. E., 438; *State v. Driggers,* 84 S. C., 526, 66 S. E., 1042, 137 Am. St. Rep., 855, 19 Ann. Cas., 1166; *State v. Jackson,* 87 S. C. [407], 410, 69 S. E., 883; *Stokes v. Murray,* 99 S. C., 221, 83 S. E., 33; *Enlee v. Seaboard Air Line Ry.,* 110 S. C., 137, 96 S. E., 490."

Exception 5 alleges error on the part of the trial Judge in permitting respondent's witness R. A. Monroe, Sr., to testify in contradiction of appellant's witness E. A. Burris, who was employed by the appellant in the maintenance department, maintaining the road in question, that Burris had told him he had made repeated request for guard rails at this precipice before the accident occurred; it being claimed by appellant that such contradiction was upon a collateral issue and the proper foundation for contradiction had not been laid by fixing the time and place at which the conversation was had. We cannot say that this was a collateral issue, since one of the allegations of negligence was that a guard rail had not been provided for this precipice. It is, of course, much better, and the strict rule is, that where it is desired to contradict a witness, such witness must be given notice of the time and place at which he is supposed to have made the statement, but the trial

Judge has a wide discretion in the allowance of so-called contradictory testimony, and this exception is therefore overruled.

Appellant has abandoned Exception 6.

Exception 7 alleges error in charging respondent's fourteenth request to charge, as follows: "While punitive damages are not permissible against the State Highway Department, if acts of its agents as alleged in this complaint were reckless or wilful, negligent acts on the part of plaintiffs' deceased would not constitute any defense to reckless or wilful acts:"

This charge, when made in a case brought under the statute allowing appellant to be sued, often spoken of as a "Statute of Grace," was error. When it is necessary to resort to this enabling statute in order to maintain an action, the person claiming the benefit of the statute must bring himself or herself strictly within the terms of the statute, which provides that such person must be free of contributory negligence, and had the Legislature intended that one could recover against this governmental agency, the appellant herein, if the acts of its agents were found to be reckless or willful, notwithstanding negligent acts on the part of the person suing, then the Legislature would have said so. On the other hand, the Legislature refuses to allow the recovery of punitive damages against this governmental agency, and punitive damages can be recovered ordinarily only where the negligent acts are found to be reckless and willful, but specifically provide that in order to recover at all the injured person or a person whose property has been injured, must show that he or she was not guilty of contributory negligence. We agree with appellant that the effect of this charge was to relieve the respondent of a burden imposed by the statute.

Appellant's Exception 8 charges error on the part of the trial Judge in modifying appellant's request to charge, as follows: "I charge you that the State

'Highway Department is not an insurer of persons traveling over its highways, and is therefore, not liable for damages caused by injuries suffered by a traveler, unless such damages were due to a defect in, or the negligent repair of, its highway, which negligence must be the proximate cause of the injury," by qualifying said request as follows: "I charge you that, gentlemen; that is in connection with what I have already charged you about the complaint. I mean the request to charge. The defendant refers to the specific allegations of the complaint about guard rails and so forth. The Supreme Court has somewhat liberalized the exact strict wording of the statute; for example, in a case in Union County where a man ran off a road and he alleges the absence of guard rails and he ran into a ditch, the Supreme Court said that came under this statute."

This charge, as modified, was misleading under the circumstances of this case, and is incorrect in that portion thereof in which it is alleged that this Court has "liberalized the exact strict wording of the statute." In effect, the trial Judge told the jury that in the absence of a guard rail, which was an admitted fact, the respondent's intestate having gone over the precipice, he was entitled to maintain this action, thus greatly weakening, if not depriving appellant of, its defense that the absence of a guard rail at this point, under all of the circumstances, was not negligence; but that it was necessary for respondent to affirmatively show that her intestate was free from contributory negligence. This exception is sustained.

Exceptions 9 to 18, inclusive, relate to the refusal of the trial Judge to grant the motion of appellant for a nonsuit and directed verdict, and we will consider these exceptions together. The acts of commission and omission on the part of appellant, alleged to be negligent, have hereinbefore been set forth, and as to the acts of commission there is testimony on behalf of respondent to sustain same, and from which more than one inference can be

reasonably drawn. It is admitted that as to the act of omission, that is, the failure to erect a guard rail or barrier at the place of the precipice, this was not done.

In the case of *Morris, Adm'r, v. Langley Mills et al.*, 121 S. C., 200, 203, 113 S. E., 632, 634, 36 A. L. R., 302, the Court lays down the duty of a county to the public with reference to its highways, and the "Statute of Grace" allowing a county to be sued being similar to the statute under which this suit is brought, we quote from said case the following: "The measure of the County's duty in that regard [duty to provide adequate guard rails on a causeway or bridge] is ordinary care to provide against such dangers to the traveling public *as may reasonably be anticipated,* having due regard to the character of the travel, the incidental purposes for which the *highway may be lawfully used,* and the nature of the danger at the point in question." (Italics added.)

In addition to the testimony taken in Court, the jury was permitted to visit the scene of the accident, and there having been some testimony from which the inference could be drawn that appellant had negligently repaired the highway and that there was a defect therein, and the jury, as aforesaid, having first-hand information by viewing the scene and all of the surrounding conditions, it was a question which should have been submitted to the jury if the acts of negligence alleged in the complaint had been proven.

However, appellant takes the position that granting that the road was constructed from each side to the center so as to produce a turtle-back effect and thus incline the road to slope towards the precipice, after crossing the center thereof in the direction in which respondent's intestate was traveling; that loose sand was allowed to accumulate on the road and an adequate sign of a sharp curve was not provided; that no planks, guard rails, or warning sign were placed along said precipice; and that this constitutes negligence on the part of appellant—the testimony shows that such neg-

ligence had not even a causal connection with the injury, much less being a contributing proximate cause, and that the sole and proximate cause of the injury of respondent's intestate was the negligence of the driver of the car in which he was riding.

In order for the Court to have granted a nonsuit or directed verdict, it would have been necessary to hold that no other reasonable inference could be drawn from all of the testimony than that the negligence of the driver of the car in which respondent's intestate was riding, was the sole, proximate cause of the injury to respondent's intestate. Whether or not it was negligence on the part of respondent's intestate to ride in the car with Greer driving was, under all of the surrounding circumstances, a question to be passed upon by the jury. We do not review this testimony, nor comment thereon except very briefly, for the reason that this case must go back for a new trial. It must be kept in mind that on motion for nonsuit or directed verdict all testimony must be viewed most favorable to a plaintiff, and if more than one reasonable inference can be drawn from the testimony, it becomes the duty of the trial Court to submit the case to the jury. Citation of authority for this rule of law is unnecessary. There is testimony that at the time respondent's intestate left the camp at Princeton in the car driven by Greer, Greer was not noticeably under the influence of whisky; there is testimony that when the car got to the dirt highway Greer commenced to drive fast, at an excessive rate of speed, and that the other occupants of the car remonstrated with him, but to no avail. The accident occurred soon after these remonstrations, and it was a question for the jury to say whether or not it was negligence on the part of respondent's intestate, although he knew that the driver of the car had been drinking some all during the night, to first get in the car which Greer was driving, and, second, whether he should have refused to ride farther after Greer failed to reduce the speed of the car

when requested so to do, taking into consideration the opportunity respondent's intestate would have had to continue to Honea Path, the time of morning, and the length of time from the beginning of the speeding until the place of the accident was reached. As aforesaid, however, appellant's position is that granting that appellant was negligent and granting that respondent's intestate was not negligent, yet a verdict should have been directed because the testimony showed that respondent's intestate was injured through the sole negligence of the driver of the car, Greer, as the proximate cause thereof. That if the road had been raised on the precipice side and no more sand had accumulated on the road than is ordinarily on a dirt road and there had been a barrier or guard rails on the precipice side of the road, a car of the weight of the car in which respondent's intestate was riding, traveling at the excessive rate of speed at which it was, would have skidded or gone through the average guard rail erected, which is, in fact, only to protect cars being operated at a reasonable and lawful rate of speed, and that if sufficient barrier had been built and maintained to prevent a car of that weight and operated at such excessive and unlawful rate of speed going into the precipice, the damage and injury would have been just as great in hitting this barrier as going over the precipice and hitting a tree.

Under the exceptions being considered, the case, after all, narrows down to the question if any other reasonable inference could be drawn from all of the testimony than that the proximate cause of the injury, resulting in the death of respondent's intestate, was the fast rate of speed at which the car in which respondent's intestate was riding was being driven.

This point has given the writer great· concern. Viewing the testimony most favorable to respondent, it is a "hairline" case. Respondent relies upon the case of *Fann v. State Highway Department,* 167 S. C., 84, 165 S. E., 785, 789, and we quote therefrom at some length mainly for the

purpose of clearing up an apparent misunderstanding of what this case held, although, even as clarified, it is some authority for the refusal of the trial Judge to grant the motions for nonsuit and directed verdict in this case with the existing law as to what constitutes a joint or common enterprise heretofore and then recognized in this State.

In the *Fann case,* we find the following language:

"The jury viewed the scene of the accident; they saw the road, the manner in which it had been constructed. They ascertained if barriers, guards, or warning signs were there. When a jury views a highway on which an accident has occurred, without much other evidence, they can usually come to a righteous conclusion as to whether or not the authorities in charge of the highway have been negligent in the maintenance and repair of the highway, and if there are defects therein sufficient to cause injuries and damages to persons and property, who are lawfully traveling on the highway.

"We need notice specially but one ground offered on the motion for a directed verdict—the one not presented in the motion for nonsuit. That ground was that the evidence in the case showed that the automobile in which the respondent was riding was being driven at a greater rate of speed than that allowed by law at the time and place of the accident, and the driver, therefore, having negligently contributed to the accident, the respondent, as a matter of law, could not recover, and the directed verdict should have been granted. The position taken is concluded against the appellant's view by our decision in the recent case of *Townsend v. State Highway Department,* 156 S. C., 541, 153 S. E., 572. In that case, where the plaintiff sued the State Highway Department for injuries to himself and damages to his automobile, on account of the negligence and mismanagement of the State Highway Department in a highway under its control, we consider the questions of the failure of the driver of the automobile to completely stop his car before entering

an express highway, and to reduce the speed of his car to a rate below six miles an hour in traversing the highway crossing, as required under the law of an operator of a motor vehicle. We held, in effect, that even if the violations of law mentioned were conclusively shown, and there was evidence also as to the negligence of the defendant, it was a question to be submitted to the jury if such a violation was the proximate cause of the injury and resulting damage."

Of course, in a case brought under the statute providing for a right of action against the State Highway Department, the person, firm, or corporation complaining must allege and prove that he, she, or it did not bring about the injury by his, her, or its own negligence, nor negligently contribute thereto, and the violation of a statute is negligence *per se*.

The negligence and contributory negligence referred to in the statute necessarily means some negligent act of omission or commission directly connected with the cause of the injury or damage, and without which the injury or damage would probably not have occurred, notwithstanding the negligence of the Highway Department.

In using the language as quoted in the *Fann case,* this Court did not intend to convey the impression that it is always necessary to submit to a jury the question or issue if such negligence or contributory negligence was a proximate cause of the injury and resulting damage, since, if the only reasonable inference to be drawn from all of the testimony is that the negligence of the complainant is a direct and proximate cause of the injury and damage, or that the negligence of the complainant contributed as a direct and proximate cause, then it would be the duty of the trial Judge to order a nonsuit or direct a verdict against such plaintiff. And especially is this true in cases brought against governmental subdivisions and agencies where the right of recovery is allowed conditioned upon the plaintiff affirmatively proving that he, she, or it is

without negligence or did not negligently contribute to the injury and damage.

As hereinbefore stated, we do not think the trial Judge could have held that only one reasonable inference could be reached from all the testimony, to wit, that the negligence of the driver of the car in which respondent's intestate was riding was the sole proximate cause of the damage and resulting injury.

These exceptions are overruled, but having sustained other exceptions, the case is reversed and remanded for a new trial.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Fishburne concur.

Mr. Justice Carter did not participate in this decision.