14786

HUTCHINSON v. CITY OF FLORENCE

(200 S. E., 73)

124

*Messrs. J. D. Gilland* and *G. Badger Baker,* for appellant,

*Messrs. McEachin & Townsend,* for respondent,

December 9, 1938.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This is an action to recover damages for personal injuries. The plaintiff alleged that on the morning of December 16, 1936, she was proceeding along McFarland toward Cheves Street in the City of Florence, when "suddenly, unexpectedly, and without warning", the bicycle on which she was riding "dropped into a hole in the pavement three and one-half to four inches deep on her right-hand side of the street"; that she thrown approximately twelve feet, falling upon her left shoulder and side; that her collarbone was shattered, and that she was seriously and permanently injured and disfigured. It was also alleged that plaintiff's injuries were not due to any act of contributory negligence on her part, but were the direct and proximate result of the negligence and carelessness of the defendant in maintaining a defective street in the following particulars:

"In allowing a dangerous hole to exist and remain open and uncovered in a much traveled street under its sole control.

"In leaving a deep hole open and unguarded in a much traveled street.

"In failing to warn the plaintiff and other cyclists by signs or lights of the presence of a deep hole in the pavement of McFarland Street.

"In allowing water to so cover and conceal an open hole in McFarland Street as to make it impossible for the plaintiff and others using the said street to avoid falling in the said hole.

"In failing to provide the plaintiff and other persons with a safe place to operate bicycles on McFarland Street, a public thoroughfare of the City of Florence.

· "In failing to keep its streets, and McFarland Street, in particular, in an adequate state of repair so as to avoid injury to the plaintiff and other users thereof.

"In creating and allowing a situation of danger to exist in a public street when it knew or should have known that such situation existed and had existed for a long period of time.

"In failing to cover or repair the said hole or to place any warning thereon after having been notified on several occasions of its dangerous condition."

The defendant denied the material allegations of the complaint, and alleged that the personal injuries, if any, suffered by the plaintiff were due to her own carelessness and negligence as the proximate cause thereof. The following defense was also pleaded: "That for a period of several consecutive days prior to the date of the plaintiff's accident on December 16, 1936, there had been considerable rainfall in the City of Florence and on McFarland Street and as a result thereof the depression on McFarland Street was caused. That the incessant rainfall for several consecutive days prior to the date of the plaintiff's accident was a concurrent contributing element, beyond the control of the defendant, causing the depression in McFarland Street, which, with the contributory negligence of the plaintiff, was the proximate cause of the plaintiff's accident."

The trial of the case resulted in a verdict for the plaintiff for $7,500.00, and this appeal followed.

As stated and argued by counsel for the appellant, seven questions are presented for our decision, the first of which is whether the presiding Judge committed error in refusing to direct a verdict for the defendant, the motion therefor being made upon the grounds that respondent's injuries were proximately caused by her own negligent acts or that she negligently contributed thereto.

We deem it unnecessary to review at any length the testimony pertinent to this issue; but a careful reading of it re-

veals that Judge Mann was entirely right in his conclusions and holdings thereabout. There was evidence to the effect that there had been considerable rain for several days prior to the accident; that the hole in which the front wheel of plaintiff's bicycle fell was "level full of water", and that there was some running down the curb in a thin sheet, rendering the street black and the hole invisible. One of plaintiff's witnesses, whose place of business was near the point of accident, testified that the hole in question was of considerable size—about thirty-three by twenty-four inches and from four to four and one-half inches deep; that it had been there for a considerable length of time, and that he had notified the city authorities of its existence, but nothing was done about it by them until after the accident. He further stated that the hole was in the line of travel that bicycles were required to take on the right-hand side of the street, and that at the time of the accident the plaintiff, at whom he was looking, was riding where it was proper and permissible for her to do so. The plaintiff herself testified that she was not riding at a fast rate of speed at the time of the accident; that she was looking ahead of her in the direction in which she was going, but did not see the hole and did not know it was there until she went into it and was thrown from her wheel and injured. There was some testimony offered by the defendant for the purpose of showing that if plaintiff had been looking where she was going there was nothing to prevent her from seeing the hole in the street. This, however, as held by the trial Judge, merely made an issue of fact, which was not for the Court. The question of contributory negligence is generally one for the jury, and under the testimony in this case, it was clearly so. There was no error, therefore, as complained of. See *Lynch v. City of Spartanburg*, 139 S. C., 295, 137 S. E., 743; *Patrick v. City Council of Charleston*, 164 S. C., 507, 162 S. E., 749.

The appellant also charges the trial judge with error "in refusing to permit full cross examination of the plaintiff as to (a) the variance between the allegations of plaintiff's complaint as to plaintiff's injuries and the actual testimony bearing thereon, and (b) plaintiff's exercise of her powers of observation for her own care at the time and place of the accident."

As to (a), it was alleged in the complaint that in the fall from her bicycle, the collarbone of plaintiff was shattered and other bones of her neck and arm were broken. On trial of the case, she was cross examined by counsel for the appellant with reference thereto, who sought to show that she had not received all of the injuries alleged in the complaint. In other words, that there was a variance thereabout between her allegations and her testimony. She stated, in reply to questions asked, that no bone was broken except her collarbone; that she did not know what was put in the complaint, as she had not read it, but that she did not say other bones, other than her shoulder. At this point, the Court observed that a party is not responsible for the technical language of his counsel, and that they would go no further into that. The appellant argues that this was error, and that its counsel should have been permitted to proceed with such cross examination, as it "would have been productive of material for the jury to have considered as to the credibility of all of respondent's testimony." We do not think that appellant may properly complain. The cross examination of the respondent by defendant's attorney, as well as his cross examination of other witnesses, fully presented to the jury what he was attempting to show, to wit, that all of plaintiff's alleged injuries did not find support in the evidence, and that this was a matter for their consideration as affecting "the credibility of all of" her testimony. We are satisfied that the jury, composed of twelve intelligent men, fully understood this to be its purpose. It would seem, therefore, that counsel could not have pursued this line of

cross examination further without useless repetition. For these reasons, and for the reason stated by the Court, we think that the trial Judge, in the exercise of a wise judg-, ment, correctly ruled as he did.

Contention (b) is also without substantial merit, for the reasons, if for no other,' that appellant's counsel was permitted to cross examine the plaintiff fully as to the exercise of her powers of observation, etc. She was questioned closely as to her knowledge and observation of the condition of McFarland Street,' her failure to notice a certain driveway by which she rode, her failure to notice the curve of the crown of McFarland Street, her failure to notice that Gaillard· was a one-way street, her failure to observe other holes in the streets of Florence or to notice any depressions which would hold water at or near the place where she worked, etc. We approve the ruling of the trial Judge. In keeping such examination in legitimate bounds, we cannot say that he abused his discretion.

The presiding Judge, with regard to the defendant's plea that there was an incessant rainfall for several consecutive days prior to the date of plaintiff's accident, which was the proximate cause thereof, prefaced his charge thereabout as follows: "There is one defense which is mentioned here in the pleadings which has not been stressed, but I will mention it to you."

The appellant complains that this remark constituted a charge on the facts and was an expression of the Court's opinion as to the weight and effect of one of the defendant's defenses. We are not in accord with this view. While the defendant did plead the defense above stated, which the trial Judge construed "to plead the act of God", such a defense is without proof in the testimony. There was some evidence that it had been raining for a day or two prior to the accident and that the hole was full of water, which gave it the color of the wet pavement and for that reason was not noticeable, but there was no evidence that the rains,.

incessant or otherwise, were the cause of the existence of the hole. On the contrary, the testimony was to the effect that the hole had been there for a long time, apparently dug by some one or caused by the wear and tear of heavy trucks passing at that point, and that its existence was known to the defendant. An " 'Act of God' is a valid defense only when it is the sole cause of the injury." *Montgomery v. National Convoy & Trucking Company,* 186 S. C., 167, 195 S. E., 247, 252. As there was no proof of such a defense, the trial Judge would have been justified in withdrawing the issue from the jury. The appellant, therefore, has no good ground for complaint, as it was given the benefit of a charge that was not warranted by the testimony.

At the close of his charge, the trial Judge inquired if he had omitted anything, to which counsel for the plaintiff replied: "I don't think there is any testimony submitted by the city to sustain the plea of act of Providence. I would like for you to charge the jury that mere rainwater on the street could not have been a defense, unless it was unusual and excessive and created the condition, because the city had to anticipate it would rain some time." The Court complied with the request in the following language: "I stated the defense had not been pressed. Since it was there, I, as a matter of precaution, charged on it. Your proposition is correct."

The appellant argues that this was error for the reason "that the presence of rainwater on the street creates a condition whereby the plaintiff would be held to a higher degree of care for her own safety while riding a bicycle than if the street was free and clear of rainwater, whereas the charge as given removes from the plaintiff the exercise of even ordinary care."

It is elementary that the whole charge must be considered in determining whether what was told the jury in any particular portion of it was prejudicial to the complainant, and

all instructions of the Court should be read in the light of evidence to which they are applicable. It will be noted that counsel for the respondent made the request to charge for the reason that the city, as he saw it, had submitted no testimony to sustain its defense that plaintiff's injuries were proximately caused by the act of God; and the trial Judge, as is seen from the language used by him, charged the request with that defense in mind, adding, in effect, to what he had already said with reference to that plea, that mere rainwater on the street would not be a defense, "unless it was unusual and excessive and created the condition." Furthermore, a reading of the charge discloses that the Court was careful to tell the jury that the plaintiff was required to use due care in the use of the streets, and that "if the young lady by the exercise of reasonable diligence, looking and watching, could have seen it (the hole), and she went on into it and was injured, she could not recover." It seems clear that when the instruction objected to is considered with the entire charge, it did not have the effect which the appellant contends it had.

The fifth question is thus stated by the appellant: "Did the trial Judge err, when charging the jury, in failing to define the term 'Greater weight or preponderance of the evidence', and in failing to define contributory negligence and to give the elements thereof?"

The Court instructed the jury as follows: "In order for the plaintiff to recover against the city of Florence, she must prove several things by the greater weight or preponderance of the evidence. She must prove first that she was injured in the particulars set out in her complaint; that is, that she received injuries as alleged in the complaint. She must prove there was a defect in the streets of the city of Florence at the time and at the place and of the character set out in the complaint. She must prove that that defect was caused by the city of Florence itself, either through its neglect or mismanagement thereof. She must prove that her injury

was the direct and proximate cause of the neglect or mismanagement of the city with respect to that defect. And she must prove that she was in nowise negligent in bringing about that injury and that her negligence in nowise contributed to bringing about her injury. Those are the things she must prove by the greater weight or preponderance of the evidence for her to recover."

While it appears that the presiding Judge did not in so many words define the term "greater weight or preponderance of the evidence", or define contributory negligence, we think that the charge as made carried to the minds of the jury what is meant by these expressions, and was fully understood by them. Aside from this, however, if the defendant desired to have them more fully defined, that the jury be given more specific instructions thereabout, then its counsel should have submitted to the Court a proper request for that purpose. Having failed to do so, appellant will not now be heard to complain.

Error is also imputed to the trial Court in failing to charge the "principle of anticipation"; that is to say, to tell the jury that, in order for plaintiff to recover, she must prove that the accident was a natural and probable consequence of the alleged neglect of the defendant, and which ought to have been seen and anticipated by it.

While this question has not been argued by appellant with any degree of insistence, we have given it full consideration. The trial Judge called to the attention of the jury the statute under which the plaintiff was permitted to bring her action; and instructed them fully and correctly as to the proof, and its degree, required of the plaintiff to recover. The law as charged, and the evidence, much of it undisputed, to which it was applicable, made clear that plaintiff's injury was one that appellant ought to have anticipated from the condition of the street. We find no reversible error.

Finally, the appellant charges the trial Judge with error in refusing to grant its motion for a new trial on the ground that the verdict is unreasonable and excessive; and this contention was strongly presented and urged by counsel in argument of the appeal. Dr. E. M. Hicks testified that he examined the plaintiff after she was injured and found that she had a "comminuted fracture of the left clavicle", which means more than one break of that bone; that "it was an unusual type of break, in that one section of the bone was broken completely out", with one end pressing against the skin and the other end "pressing against the subclavian artery, which made it a serious injury"; that he sent the plaintiff to the hospital as "it was a type case that was not at all suitable for office treatment", and while the witness usually and ordinarly set collarbone breaks, he did not attempt to do so in this case, "because this piece of broken bone was pulsating. I could see it jumping on the subclavian artery, and I don't feel like it was anything to be done at the office, and I put her in the hospital"; that "they adjusted the bones and put her in splints and kept her there for two or three weeks", and that more than one adjustment was required in getting the bone in place, which caused the patient to suffer much pain; that she had to submit to the treatment of strapping up the body to keep the bone in place, as was necessary in a case of this kind, and to lie permanently fixed on her back, "so that those bones will not move until they are glued together for two weeks"; and that at the time the plaintiff was brought to him she was "in considerable shock and a great deal of pain." The witness further testified that the manner in which the bones united has made the left shoulder lower and narrower than the right, causing a permanent impairment of its use; and that he was of opinion that the disability would be permanent and was afraid that the pain she was suffering would continue indefinitely.

Dr. James McLeod, surgeon at the McLeod Infirmary,

where the plaintiff was taken for treatment after she was injured, corroborated generally the testimony of Dr. Hicks. He stated that there was a comminuted fracture of the collarbone, and explained at length the danger of such a fracture. He testified that the fragment of bone was pointed in the direction of the subclavian artery, and appeared to have shoved the artery aside; that the patient was suffering a great deal of pain and that they had to put her in a very tight compression bandage, so tight that there was impending danger of shutting off the blood to the left arm; that there was a discussion as to performing an operation and transposing the bone but that the witness opposed this being done, as he thought it was too hazardous to do so; that while there has been a very good union of the bones, they are somewhat overlapped, and the shoulder is somewhat weakened as a result of it; that there has been a narrowing of the region between the arm and the breastbone, and that it would not be unreasonable for pain in the arm and in the shoulder region to have continued since the injury, and unless the bone is operated on, the witness was of opinion that the plaintiff would not get any more strength in the arm, but that procedure he would not agree to. The doctor further testified that he had had a rather large experience in the matter of collarbone fractures, and that this was about the worst fractured collarbone he had ever seen, being very much different from the usual one.

The plaintiff herself testified as to her suffering due to her injuries, stating that she could not, as a result of the broken collarbone, lift anything heavy and that it hurts even to sweep; and that sometimes her hand gets numb, and has hurt her ever since she has been out of the infirmary. She also testified that she can no longer do any heavy work.

Mrs. G. R. Hutchinson, the mother of plaintiff, stated that respondent could not even sweep on account of her shoulder, and was unable, for instance, to hang a shade in the house, "without very much pain"; that she was not able to go

back to work with the Union News Company after she was injured "for about two months", and finally had to give the work up because of the pain in her shoulder and arm; and that she had not been able to secure any work that she was capable of doing since then.

We do not think it may soundly be held, in view of the testimony pertaining to the extent of plaintiff's injuries, her sufferings, etc., some of which we have not specifically referred to, that the trial Judge abused his discretion in refusing to reduce the verdict—to grant a new trial *nisi*. While the amount awarded may seem large, we can not say it was not justified by the evidence. The jury thought it was right, the trial Judge approved the conclusion reached by them, and we think it should be allowed to stand.

The judgment of the Circuit Court is affirmed.

Messrs. Justices Bonham and Fishburne concur.

Mr. Justice Baker did not participate.

Mr. Justice Carter did not participate on account of illness.