14814

MORGAN v. GREENVILLE COUNTY
SMITH v. SAME
(1 S. E. (2d), 144)

*Mr. Wilton H. Earle,* for appellant,

*Messrs. J. Robt. Martin* and *J. Robt. Martin, Jr.,* for respondents.

February 3, 1939.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

These two cases arose out of an automobile collision, respondents being injured when the car, the property of the respondent, Alvin Smith, and occupied by him and the respondent, Miss Frances Morgan, collided with an automobile being driven in the opposite direction on the Greenville County highway leading from Tigerville to Traveler's Rest, and·known as the Tigerville road. The car with which the Smith car collided was occupied by a Mr. Chandler and others, and will hereafter be referred ˙to as the Chandler car, if such reference be necessary.

Under the facts of this case, we find that it will be unnecessary to pass upon the issue if the respective respondents were engaged in a common or joint enterprise. (However, we will state that undoubtedly they were so engaged, if the opinion of the writer hereof as to what constitutes a common or joint enterprise as set forth in *Lusk v. State Highway Department,* 181 S. C., 101, 107, 186 S. E., 786, were the accepted law of this State.) Therefore, in our discussion we will treat the appeals as though there is but one respondent, and one case.

The complaint alleges that the injury to respondent (personal and property) resulted from and was caused by the negligent maintenance and upkeep of the highway herein above stated, the failure to make proper inspection and locate the defect in same, and the failure to put up any guards

or other warning of the defect. There is also an allegation that the respondent was without negligence.

The answer of appellant was a general denial, and the special plea, "act of God."

At the conclusion of respondent's testimony, appellant made a motion for a nonsuit, and at the conclusion of all the testimony, a motion for a directed verdict. Following the rendition of a verdict in favor of respondent, a motion was made for a new trial. These motions involved only two questions: (1) Whether or not there was sufficient evidence of negligence on the part of appellant; and (2) whether or not the respondent was guilty of contributory negligence as a matter of law. Of course, in a suit against a county, the complainant must show that he is free from negligence which is a proximate contributing cause of his injury.

At the point on the Tigerville road where the collision between respondent's car and the Chandler car occurred, the road was curved, and in the direction in which respondent was travelling, his right of the center of the road was the inside curve, and down grade. It was a tar-treated and hard-surfaced road, and immediately adjacent to the hard-surface, on the inside of the curve, the shoulder had become washed away, and the hard-surface broken off on the edge from ten to twelve inches and more, at some places, and the washout or trench immediately adjacent to the hard-surface was from six to sixteen and one-half inches in depth, and extending along the road for a distance variously estimated at from twenty to thirty or forty feet. Travelling on the inside of the curve the lights of an automobile would not shine thereon, but to the left, and therefore the condition of the highway was not observable after nightfall. On the evening of November 5, 1937, at about 8 o'clock, while travelling this highway, the right wheels of respondent's car went off the edge of the hard-surfaced portion of the road into this gully or washout, at which time the Chandler car was approaching around the curve, and when respondent under-

took to and did get back upon the surface-treated highway, it caused his car to cross the center of the road and before he could get it back to his right side, the front of the Chandler car came into collision with the rear of respondent's car, resulting in personal and property damage. The paved or surface-treated portion of the road at one point adjacent to the washout was only sixteen and one-half feet wide, but the average width of the entire road was nineteen feet. The photographs of the road show that one operating a car at this point, especially if such one was intent upon avoiding a possible collision with an approaching automobile, could easily drive into or have his car deflected into this washout or gully, and that it was a serious defect in the road. There is testimony that this condition had existed partially as long as from March, 1937; and that shortly before the accident, the condition of the shoulder and road at this place had been called to the attention of one of the foremen engaged in the upkeep of roads of and under the care of appellant, but not from the standpoint of such defect being dangerous to the travelling public.

We have of course in our brief statement of the facts and conditions in reference to the highway, stated them from the testimony in behalf of respondent most favorable to him, but it should also be recorded that, although the road, shoulder and washout had been since the accident filled with dirt, the jury were allowed to view the "scene" before rendering their verdict.

It is the settled law of this State that on a motion for nonsuit or directed verdict all testimony must be viewed most favorable to a plaintiff, and if more than one reasonable inference can be drawn from the testimony, it becomes the duty of the trial Judge to submit the case to the jury.

As stated above, appellant pleaded the act of God, and to sustain such plea, offered evidence of an extraordinary rainfall in Greenville County on October 19, 1937, which caused

great damage to roads and bridges in that county, and of another rain on October 26, 1937, of 1.20 inches.

In *Correll v. City of Spartanburg,* 169 S. C., 403, 169 S. E., 84, 86, Mr. Justice Bonham, in writing the opinion of the Court stated: " * * * It is also true that one is not liable for damages caused by the act of God or the public enemy, if such act be the direct or proximate cause of the injury. It is the settled rule of the law in this jurisdiction that the jury is the sole judge of the facts of the case, and, if there be relevant and competent testimony on the issues, they must be submitted to the jury for determination."

"An 'act of God' is a valid defense only when it is the sole cause of the injury." *Hutchinson v. City of Florence, S. C.,* 200 S. E., 73, quoting with approval from *Montgomery v. National Convoy and Trucking Co.,* 186 S. C., 167, 195 S. E., 247.

We can at this time well copy-model from the *Correll case.* Was the county negligent? Did it know of the washout and condition' of the road, and did it negligently fail to repair it? Or did it negligently fail to ascertain the existence of the defect in its road and the adjacent shoulder, and repair it?

There is testimony that long before the "flood rains" of October 19, 1937, the road at this point needed repair; there is no testimony that the rain on October 19, was the sole cause of the condition of the road at the time of the accident; there is no testimony that this rain materially increased its bad condition, but granting and conceding that it did, it was not until the night of November 5, 1937, that respondent drove into this "washout."

On all of the above issues more than one reasonable inference could be drawn, and it was clearly the duty of the trial Judge to submit the case to the jury.

The appellant relies strongly upon the case of *Bunton v. South Carolina State Highway Department,* 186 S. C., 463, 196 S. E., 188, especially as to con-

tributory negligence of respondent.. We quote with approval from the order refusing the motion for a new trial of the learned Judge who presided at the trial on circuit:

" * * * The facts in the instant case are so different from those in the *Bunton case* as to make the *Bunton case* inapplicable here."

"In the *Bunton case,* the Court made this observation as to the facts: 'One of her own witnesses, who was familiar with the place, testified that any one looking could easily see that the widened pavement did not extend any further than it actually did. The road at the point of the accident is straight for quite a distance, the narrowest part of the paved lane being 18 feet, the regular standard width, which continued on towards Savannah from where the widened pavement ended. There was no evidence that visibility was not normal; it was midday, and while it was sprinkling rain, the driver of the car stated that the pavement was not wet; and neither Mrs. Bunton, nor any one else, testified that, at the time of the accident, travel at this point was congested; or, in fact, any other car or motor vehicle was approaching or passing by.'

"In the instant case, the plaintiff was driving at night, on the inside of a curve, causing his lights to shine to the left and away from the edge of the surface treatment, and there was another vehicle approaching. There is abundant evidence that one driving along this highway under these circumstances could not see the 'washout' complained of. In the *Bunton case* the hole could be easily seen, the road was straight and the plaintiff was driving in broad daylight, with no other traffic along the highway. In the instant case, the road was surface treated, making it more difficult to observe at night than a cement road. In the *Bunton case,* there was no defect in the improved portion of the highway. In the instant case, there is considerable testimony that the road at the point in question was twelve to eighteen inches narrower than the other portion of the road, so that the defect complained of in the instant case was in part in the

improved portion of the road itself. The testimony shows the 'washout' in question was from three to twelve inches in depth and ran parallel to the road for a distance of about twenty-five feet.

"There are other circumstances not necessary here to refer to that make the case here different from the facts in the *Bunton case*. I do not think it could be held that the plaintiff was guilty of contributory negligence as a matter of law under the testimony in getting into this 'washout.' Certainly, more than one reasonable inference can be drawn from this testimony. If he is not guilty of contributory negligence as a matter of law in getting into the 'washout,' he was faced with a sudden emergency in the night-time, when on account of the curve his lights were shining to the left and not on the defective portion of the road. It could not be said that his actions thereafter amount to contributory negligence as a matter of law. While it is true that the plaintiff must show that he was free from contributory negligence, it is not necessary that that be shown entirely by his own testimony, but all the testimony offered by the plaintiff must be considered in determining whether or not he has carried the burden of proof as to freedom from contributory negligence.

"At the suggestion of counsel for both sides, the jury viewed the locus. The jury in this case was one of unusual intelligence. They saw the situation and were able doubtless in this way to get a more complete picture of the situation than the cold testimony would disclose. I see no reason for disturbing the verdict."

All exceptions are overruled, and the judgments appealed from affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Fishburne concur.

Mr. Justice Carter did not participate on account of illness.