16916

KATHRYN S. RICHARDS v. THE GREAT ATLANTIC & PACIFIC TEA COMPANY, ARMOUR & COMPANY and H. D. LEDFORD

(83 S. E. (2d) 917)

*Messrs. Price & Poag,* of Greenville, and *J. Claude Fort,* of Gaffney, *for Appellants,*

*Messrs. Sam R. Watt,* and *Chester D. Ward, Jr.,* of Spartanburg, and *H. R. Swink,* of Gaffney, *for Respondent,*

*Messrs. Price & Poag,* of Greenville, and *J. Claude Fort,* of Gaffney, *for Appellants, in reply,*

October 4, 1954.

STUKES, Justice.

Respondent was shopping in the large retail store of the corporate appellant (the personal appellant was the store-manager) when she fell backward over boxes containing butter and cottage cheese, and received personal injuries for which she brought this action· for actual and punitive damages. The boxes had shortly before been delivered by Armour & Company and placed against the counter of the dairy products department, but in the aisle which customers used to approach the coffee counter. Respondent had already made several purchases in the store and had them in a push-cart, which was the custom in this self-service store.

She testified that the aisle was clear when she passed and she awaited service by the coffee saleslady who was marking goods and continued at that for several minutes during which, it may be inferred from respondent's testimony and that of another of her witnesses, the boxes were delivered by Armour without her knowledge. She said, in effect, that the saleslady indicated to her to move backward, "put her hand against me," so that she (the saleslady) could get behind the counter in order to serve respondent who had purchased three pounds of coffee to be ground. When respondent stepped backward, in order to get out of the way, she fell over the boxes, struck her head on the floor and also injured her spine, which struck the boxes. She was afterward a patient in several hospitals and testified, as did

her husband, to continued pain, suffering and incapacity. She was supported in her testimony relating to the facts of the accident by a former salesman in the meat department of the store, who said he had a clear view and saw it all. According to him, the boxes of merchandise were placed close behind respondent as she waited to be served.

The rule of liability which is applicable in such cases as this was last stated by this court in *Mullinax v. Great Atlantic & Pacific Tea Co.*, 221 S. C. 433, 70 S. E. (2d) 911, 912, as follows: " 'The principles governing liability in a case of this kind are very simple and well settled. One who operates a mercantile establishment is not an insurer of the safety of those who enter his store but he does owe them the duty of exercising ordinary care to keep the aisles, passageways, and such other parts of the premises as are ordinarily used by customers in transacting business in a reasonably safe condition. *Bagwell v. McLellan Stores Co.*, 216 S. C. 207, 57 S. E. (2d) 257, 260.' " When the defect results from the unauthorized act of another, the storekeeper is held only to reasonable care in the discovery and remedy or removal of it. The latter observation is irrelevant in our consideration of this appeal because there was evidence that the placement of the boxes was as authorized by appellants, and admittedly observed by two of the sales force.

Digests of many kindred cases from other courts appear in the series of six annotations of which the last is at 162 A. L. R. 949. The references to those which appear to be closest in facts to this follow.

The proprietor of a fruit. and vegetable store having a center stand about which were located counters for the delivery and display of goods, and around which was an aisle or passageway for the use of customers, was held liable in *Brinkworth v. Sam Seelig Co.*, 1921, 51 Cal. App. 668, 197 P. 427, for injuries to a customer who, in taking her departure after having purchased goods, stepped backward and fell over boxes standing in the aisle, which had been placed

there three hours before, contrary to the custom of the defendant. And to same effect is *Ginns v. C. T. Scherer Co.*, 1914, 219 Mass. 18, 106 N. E. 600, 33 A. L. R. 218.

In *Humphrey v. Felker,* 1933, 14 Ohio Law Abst. 715, where it appeared that the plaintiff, after telephoning in the defendant's store in reference to her account with that store, as directed by the defendant, stepped back and fell over a waste basket which, the plaintiff testified, was not there when she went to the telephone, and which, therefore, must have been placed there by one of the defendant's employees while the plaintiff was telephoning. It was held that the trial court had erred in directing a verdict for the defendant, 100 A. L. R. 740.

In *Finnegan v. Goerke Co.,* 1929, 106 N. J. L. 59, 147 A. 442, where evidence showed that plaintiff, in walking behind two other people, fell over a box 3 feet long, 1½ feet high, and 15 inches wide, which had been placed two months before in the aisle, flush with the end of a counter, the court held, in reversing a judgment of nonsuit, that the question whether the defendant, in so placing the box, was complying with its duty to the plaintiff as an invitee to exercise ordinary care to render the premises reasonably safe for the purposes for which the invitee entered, and to abstain from any act which would make the plaintiff's use of the place dangerous, was for the jury. 100 A. L. R. 742.

Recurring to the case in hand, the verdict which the jury first returned was as follows: "We find for the plaintiff injunction prayed for, actual damages Ten thousand dollars, punitive damages, Eight thousand dollars." The court inquired whether there was objection to the form of the verdict, to which counsel for appellants replied, "We have nothing to say." The court thereupon instructed the jury that it was not clear from the verdict what they intended to find; and he instructed them further, as will be presently quoted. They retired and after ten minutes of further deliberation, returned the following verdict: "We find for the plaintiff against The Great Atlantic & Pacific Tea Company

and B. H. Ledford actual damages Ten Thousand Dollars, punitive damages, Eight Thousand Dollars." It is noted that the first verdict was, in effect, for damages against all of the defendants.

The additional instructions, which were given to the jury between the verdicts, follow:

"I suppose I better run over the forms of verdicts that I gave you so that you will understand the verdicts which you can render. Of course, what verdict you render depends upon the conclusions you come to from the facts in this case, your determination of the facts, and application of the law as I have attempted to charge it to you at the close of the case. I told you at that time that in the event you came to the conclusion the plaintiff was entitled to a verdict, you could find one of several verdicts, and the forms of such verdicts would be: 'We find for the plaintiff,' if against all of the defendants, 'We find for the plaintiff so many dollars actual damages and so many dollars punitive damages,' writing it out in words and not in figures. Or, in the event that you found against the defendants actual damages only, against all of the defendants, the form of it would be, 'We find for the plaintiff so many dollars actual damages,' writing it out in words not in figures.

"Or, in the event that you conclude that you should find a verdict, or came to the conclusion from the facts, that you should find a verdict against the defendants Great Atlantic and Pacific Tea Company, and the other defendant manager, simply say, 'We find for the plaintiff against the Great Atlantic and Pacific Tea Company and B. H. Ledford, so many dollars actual damages and so many dollars punitive damages,' writing it out in words and not in figures.

"Or in the event you conclude you want to return a verdict against those two parties for actual damages only, the form of it would be, 'We find for the plaintiff so many dollars actual damages, against the defendants the Great Atlantic and Pacific Tea Company and B. H. Ledford so many

dollars actual damages,' writing it out in words and not in figures.

"Or in the event you concluded and wanted to find a verdict for the defendants, the form of that verdict would simply be, 'We find for the defendants,' and sign your name as foreman. Those are the forms of verdicts that you can render in this case. So I will have to ask you to return to the jury room and give further consideration to this case."

In order to evaluate the full impact upon the jury of the foregoing, it must be considered in the light of the following portion of the former instructions:

"I charge you that you can find that the defendants, Atlantic and Pacific Tea Company, and the defendant B. H. Ledford are responsible and liable to the plaintiff in this case, and that Armour and Company is not liable to the plaintiff. But I charge you that you cannot find for the plaintiff in this case against the defendant, Armour and Company unless you also find for the plaintiff against the other defendants."

It was alleged in the complaint that the box of butter was placed in the aisle by the agent or servant of the defendant Armour & Company at the request of and under the direction and supervision of the other defendants. The specifications of negligence were: (a) placing the box where defendants knew, or should have known, customers were constantly passing; (b) so placing the box without warning to plaintiff thereof; (c) by thereby creating a hazard to plaintiff and other customers; and (d) failing to take any precautions for plaintiff's safety. (The evidence established that on top of the box of butter was a carton which contained six glass jars of cottage cheese.) It is thus seen that concurrent acts of alleged negligence and willfulness were alleged and the evidence made issues of negligence for the jury upon which they might have found a verdict against any one or more or all of the defendants. *Cammer v. Atlantic C. L. R. Co.,* 214 S. C. 71, 51 S. E. (2d) 174, and cases cited. *Culbertson v. Johnson Motor*

*Lines,* S. C., 83 S. E. (2d) 338. However, by the verdict which the jury found they absolved Armour & Company and there is no appeal from that feature of the verdict or from the judgment which may have been entered upon it. In *Cammer v. Atlantic C. L. R. Co., supra,* it was said, 214 S. C. 77, 51 S. E. 176, which is applicable here:

"The cited authorities [also relied upon by the instant appellants-interpolated] are not pertinent. They control when a master and servant are jointly sued for damages resulting from the act or acts of alleged negligence of the servant and the servant is acquitted of negligence by the verdict, which will then not stand alone against the master. Liability in such a case results from application of the rule of respondeat superior and the simple converse of it is that there is no liability upon the master if none upon the servant. This situation is not at all present in the case in hand. The contended acts of negligence of the Southern were found not to be such by the jury, or at least not a proximate cause of respondent's injuries; but conditions may have resulted from the agency of them which should have affected the conduct of respondent and appellants alike, and the jury may well have given weight to these conditions in determining the standard of care which was required of the other litigants under the circumstances. Moreover, it is well-settled that concurrent tort-feasors may be joined as defendants and recovery had against one or more or all. Applicable is the following excerpt from the opinion in *Pendleton v. Columbia Ry., Gas & Electric Co., et al.,* 133 S. C. 326, 131 S. E. 265, 267: 'When a plaintiff joins two or more alleged wrongdoers as parties defendant in one action, such joinder in itself necessarily implies that he has elected to treat his injury as a joint tort, and to recover upon the theory of joint liability. Such election to sue upon the theory of joint liability logically involves the relinquishment of the right in that action to raise a "separable controversy" with any one defendant and to recover against one or more separately upon the theory of several liability in any sense other than that *the*

*plaintiff in such joint action is not bound to recover against all, but may recover against one or more and not against others.'* (Italics added.) Also see: *Landreth v. Atlantic Refining Co.,* 177 S. C. 490, 181 S. E. 727, and *Boyd v. Maxwell,* 190 S. C. 103, 2 S. E. (2d) 395."

The instruction that the jury could not find against Armour & Company alone, or, quoting, "unless you also find for the plaintiff against the other defendants," was erroneous and the appellants claim prejudice which arises, they say, because a verdict against Armour alone would have absolved them; and that a verdict against them and Armour would have entitled them to contribution in the payment of any such verdict and judgment. The last contention need not be examined, that is, whether there would have been contribution (but see *Brown v. Southern Ry. Co.,* 111 S. C. 140, 96 S. E. 701) because it was clearly prejudicial to the rights of appellants to instruct the jury that in order to find against Armour they must also find against appellants. Under the pleadings and evidence they could have reasonably found against Armour alone; or they might have apportioned the damages as is established by the cases cited in the article by the late, able Judge Lide in 1 S. C. Law Quarterly 209, 214, sub-entitled Apportionment of Actual Damages.

Because of the necessity of reversal for new trial on account of the stated error, some of the other grounds of appeal need not be considered. However, there are issues which must be decided in view of the trial record and the exceptions. The first is whether there was sufficient evidence of negligence of appellants for submission to the jury. As indicated above, we agree with the trial judge that there was, which will be further shown hereinbelow by limited reference to the testimony. We similarly conclude with respect to the alleged contributory negligence of respondent; that question was likewise for the determination of the jury.

On the other hand, we think that there was insufficient evidence of recklessness, willfulness and wantonness on the part of appellants to submit the issue of punitive damages. Upon careful consideration of the record we are constrained to agree with appellants' contention that their conduct amounted, as a matter of law, to no more, at most, than simple negligence. The boxes constituted a relatively small obstruction and they were handled in accord with prior custom; but they caused serious injury, the like of which the jury should determine whether a reasonably prudent storekeeper should have foreseen in the exercise of due care under the circumstances.

It is better that we not elaborate our views of the facts because they should not influence the jury upon the new trial. Moreover, this opinion relates only to the evidence which was adduced at the trial under review; upon new trial the evidence may materially vary from that, whereby it may warrant conclusions different from the foregoing.

It may be added that appellants have argued that the only wrongful act, of which there was any evidence, was the placing of the boxes behind respondent as she stood unaware in the aisle; but this overlooks the authority and direction therefor, and the failure of appellants and their employees to promptly move the boxes or warn respondent of the danger created by the presence and location of them. The saleslady, who was serving respondent, testified that she receipted for the boxes but claimed they were placed in the aisle before the arrival of respondent at her counter, and said that she expected to remove them before going to lunch about an hour later. Needless to say, if she, the manager or some other employee had moved them promptly upon the deposit of them by the servant of Armour, whether this was before or after respondent's arrival at the counter, the unfortunate accident would have been prevented. Whether such remissness and failure to warn respondent constituted negligence under all of the attendant circumstances was for the determination of the

jury. This also answers appellant's contention that the absolution of Armour, whom they call an independent contractor, absolves them from liability. They are liable for their own acts, if negligent, regardless of the vindication of Armour by the verdict of the jury, under the authorities which have been cited. Moreover, exoneration of Armour was not unjust under the facts if the jury believed the testimony of the deliveryman, which the verdict indicates they did. He testified that he made delivery of the boxes of butter and cheese as required by the manager of the store, obtained receipt from the saleslady in charge of that counter and left copy of it in the office of the store. She testified that she left the boxes in the aisle five to ten minutes before the accident while she marked other merchandise and then began to wait upon respondent. The jury was authorized in finding negligence in this lax manner of receiving the boxes of goods, permitting them to be placed in the aisle and delaying removal of them out of the way of customers, all without warning respondent who did see them before her fall.

It hardly needs to be added that the evidence and inferences have been considered most favorably to respondent, which the nature of the appeal requires.

Reversed and remanded for new trial.

TAYLOR, OXNER and LEGGE, JJ., concur.

M. M. MANN, Acting Associate Justice, concurs in part; dissents in part.

I concur in so much of the leading opinion as holds that there was not sufficient evidence of recklessness, willfulness and wantonness on the part of appellants to submit the issue of punitive damages to the jury.

I further concur in so much of the leading opinion as holds that "there was sufficient evidence of negligence of appellants for submission to the jury."

I dissent from so much of the leading opinion as holds that there was reversible error on the grounds stated. After

a careful study of the charges, first as originally given (and it was an able charge) and the additional brief charge given at the time the jury was returned to its room for clarification of its verdict, taken as a whole, I am of the clear conviction that any error contained in the original charge was harmless. The very fact that upon receipt of the additional charge which refreshed the minds of the jury as to the forms of verdict they could return, the jury returned within a few minutes with the clearly expressed verdict finally rendered indicates that any former confusion had been removed. I think the judgment as to actual damages should be affirmed.