**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CLEMA O. BAKER,
Plaintiff-Appellee,

v.                                                                     No. 96-2815

TOYS-R-US, INCORPORATED,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-95-1183-3-0)

Argued: October 29, 1997

Decided: January 13, 1998

Before WILKINSON, Chief Judge, and RUSSELL and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gray Thomas Culbreath, COLLINS & LACY, P.C.,
Columbia, South Carolina, for Appellant. William Pearce Davis,
BAKER, BARWICK, RAVENEL & BENDER, L.L.P., Columbia,
South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mrs. Clema Baker slipped and fell in a Toys-R-Us ("Toys") store, severely injuring her ankle. She brought a diversity action against Toys in the District of South Carolina, and a jury awarded her $50,000, reduced by 5 percent for comparative negligence. Toys appeals and we affirm.

I.

On Saturday, June 12, 1993, Mrs. Baker entered a Toys store in Columbia, South Carolina, to shop with her daughter-in-law, another woman, and three children. As Mrs. Baker walked around a display in the seasonal area of the store, she fell to the floor after stepping on a (metal) base bracket trim piece that had become detached from the bottom of the display shelving.[1] Mrs. Baker's ankle was severely fractured in the fall, and she was taken to the emergency room for treatment. The injury required surgery, which included the insertion of several pins in the ankle. Mrs. Baker, who was sixty-nine at the time, claims that this injury will never completely heal.

On April 20, 1995, Mrs. Baker sued Toys, seeking damages in excess of $50,000 for her injuries. As mentioned above, when the case was tried, Mrs. Baker received a jury verdict for $50,000 that was reduced by 5 percent for her own negligence.

At trial Mrs. Baker was allowed to present evidence, over Toys' objections, about prior incidents in which trim pieces had fallen off displays in Toys' stores. Kevin Holma, the manager of the Columbia store at the time of the accident, testified that trim pieces are some-

_____

[1] A base bracket trim piece is a decorative covering that attaches to the base of display shelving.

2

times bent by floor buffers and that these bent pieces are usually replaced because they do not fit back on to the displays very well. He also said that even if a trim piece is properly attached, its "nose" sticks out enough that it can be caught by a passing shopping cart. He admitted that shopping carts can and do knock trim pieces off.

Thomas Merriweather, who had worked for Toys for about three years, said that he had witnessed trim pieces knocked off six to ten times and that he had seen shopping carts knock them off. He also testified that five or six times he had to reinstall trim pieces knocked off by customers or by children playing in the store. If the piece was difficult to get back on, he would use a rubber mallet to get the piece to lock into place. Finally, Merriweather said, if trim pieces were not properly installed, they would "hang[ ] loose" from the shelving.

Rachel McInnis, another employee, had seen both shopping carts and flat cars (used by employees to move merchandise) accidentally bump against trim pieces and dislodge them. She said that if a trim piece is not put on correctly, "it just pops off" when something bumps against it.

Cory Evins, a maintenance worker at Toys, testified that he saw trim pieces on the floor on Monday mornings after the floor care crew had been in the store. He generally found them lying immediately next to the display shelving where they attach, and it was a part of his job to pick them up off the floor.

The testimony of expert witness James Spano, a safety engineer and certified hazard control manager, was also read to the jury. He testified that trim pieces pose the risk of coming loose when they are struck. According to Spano, in the front of the store where Mrs. Baker fell the trim pieces were secured by clips, rather than by bolts or screws. However, in the back of the store and in another Toys store in Atlanta, the trim pieces were bolted to the display shelving and thus could not be easily dislodged.

Mrs. Baker did not submit any evidence that established when or how the trim piece that she stepped on had become detached. No witness saw the piece detached before she fell, and Holma (the store manager) testified that when he walked through the seasonal area four

3

to ten minutes before the accident, he did not see the trim piece dislodged, loose, or on the floor. Trim pieces make a loud noise when they fall to the floor, yet no witness heard any such sound before Mrs. Baker fell.

Toys timely objected to the submission of evidence relating to prior trim piece incidents, and it now appeals both the admission of this evidence as well as the district court's denial of its motion for judgment as a matter of law or in the alternative a new trial.

II.

Toys raises three arguments on appeal. First, it asserts that the district court erred in admitting evidence relating to prior incidents when trim pieces became detached. Toys says that under South Carolina slip and fall law this evidence was not "of consequence to the determination of the action," Fed. R. Evid. 401, so it was irrelevant and inadmissible under Fed. R. Evid. 402.[2] Second, Toys argues that even if the evidence was relevant, the district court abused its discretion in not excluding it under Fed. R. Evid. 403 because its prejudicial impact substantially outweighed its probative value. According to Toys, because evidence of prior incidents cannot establish liability under South Carolina law, admitting this evidence is highly prejudicial because it encourages a jury to expand a proprietor's liability on legally impermissible grounds. Finally, Toys argues that the district court erred by failing to grant its motion for judgment as a matter of law (or in the alternative a new trial) because Mrs. Baker failed to show that Toys had actual or constructive notice that the trim piece had become detached. Toys asserts that it cannot be held liable under South Carolina law without this showing. Each of these arguments is grounded in the same legal issue, namely, whether South Carolina law requires that Mrs. Baker establish that Toys had actual or constructive

_____

[2] The federal cases cited by Toys requiring that evidence of prior incidents bear a "substantial similarity" to the accident at issue are not on point. These cases either predate the Federal Rules of Evidence which embody a broad principle of relevancy or relate to product liability issues. If the evidence in this case is otherwise relevant, any dissimilarity of prior incidents affects the weight of the evidence and not its admissibility.

4

knowledge of the detachment of the trim piece that caused her fall, regardless of any prior experience that Toys might have had with trim pieces.

We review evidentiary rulings for abuse of discretion, see Ridge v. Cessna Aircraft Co., 117 F.3d 126, 129-30 (4th Cir. 1997), although we review de novo a trial court's interpretation of state law, see Trimed, Inc. v. Sherwood Med. Co., 977 F.2d 885, 888 (4th Cir. 1992). We also review de novo the denial of judgment as a matter of law, see Redman v. John D. Brush & Co., 111 F.3d 1174, 1177 (4th Cir. 1997), but we will only reverse the denial of a motion for a new trial for an abuse of discretion, see United States v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997). Because we believe the district court properly applied South Carolina law, we affirm.

Under South Carolina law it is well settled that while a storekeeper "is not an insurer of the safety of those who enter his store," he nevertheless "does owe them a duty of exercising ordinary care to keep the aisles, passageways, and such other parts of the premises as are ordinarily used by customers in transacting business in a reasonably safe condition." Bagwell v. McLellan Stores Co. , 57 S.E.2d 257, 260 (S.C. 1949); accord Meadows v. Heritage Village Church & Missionary Fellowship, Inc., 409 S.E.2d 349, 351 (S.C. 1991) (owner has duty of "`reasonable care . . . to keep the premises used by invitees in a reasonably safe condition'" (quoting Henderson v. St. Francis Community Hosp., 399 S.E.2d 767, 768 (1990)); Moore v. Levitre, 365 S.E.2d 730, 730 (S.C. 1988) (quoting case following Bagwell). In order to recover from a storekeeper, a plaintiff must prove negligence by "show[ing] either (1) that the injury was caused by a specific act of the [owner or his agent] which created the dangerous condition; or (2) that the [owner or his agent] had actual or constructive knowledge of the dangerous condition and failed to remedy it." Anderson v. Racetrac Petroleum, Inc., 371 S.E.2d 530, 531 (S.C. 1988) (per curium).

The key issue in this appeal is whether this case involves a dangerous condition which was "created" by Toys or whether it involves a condition relating to a "foreign substance" for which Toys is liable only if it had actual or constructive knowledge of the specific hazard and failed to remedy it. We agree with Mrs. Baker that her case is

5

governed by South Carolina law governing the "creation" of hazards by store owners.

In Henderson v. St. Francis Community Hospital , 399 S.E.2d 767 (S.C. 1990), the South Carolina Supreme Court ruled that a hospital could be held liable for a dangerous condition created by sweet gum trees planted in its parking lot. Because the court found that "more than one reasonable inference c[ould] be drawn in regard to the reasonableness of [the hospital's] safety precautions," it held that a jury could find "that the hospital failed to keep its premises reasonably safe." Id. at 769. The hospital in that case not only created the condition by planting the trees in its parking lot, it also knew that the gum balls which fell from the trees created a safety hazard. Indeed, the hospital was "specifically advised to remove the trees because they produced debris which created a nuisance and maintenance problem." Id. Despite this, the hospital did not remove the trees and did not establish a regular groundskeeping program to address the hazard. The South Carolina Supreme Court did not treat the case as one involving a substance foreign to the parking lot and thus did not require that the plaintiff prove that the hospital knew that gum balls were on the ground at the time of the accident. Instead, it found that the jury could properly infer from the evidence that"the hospital was negligent in failing to provide reasonably safe conditions for its visitors and patients by not removing the trees or employing an adequate maintenance program when it had actual and constructive knowledge of the dangerous condition created by the sweet gum trees." Id.

Cook v. Food Lion, Inc., 491 S.E.2d 690, 691-92 (S.C. Ct. App. 1997), is even more similar to this case. In Cook the court ruled that floor mats were not "foreign substances" because Food Lion created the "dangerous conditions by placing the mats" on the floor. Id. at 691-92. Having ruled that Food Lion created the condition, the court held that it was not necessary to show that the defendant "had notice that the floor mats were wrinkled or bunched immediately prior to Cook's fall." Id. at 692. Moreover, the court ruled that "the testimony of the tendency of the floor mats to wrinkle was directly relevant to the issue of whether a dangerous condition existed in the store." Id.

Like the proprietors in Henderson and Cook, Toys created a hazard by installing trim pieces at floor level that would become dislodged

6

if struck. Even though prior incidents showed that Toys and its employees knew that trim pieces would become detached, Toys did not implement a maintenance program which included bolting (or otherwise securely attaching) the pieces to the shelving in the area of the store where Mrs. Baker fell. A reasonable jury could therefore infer that Toys was negligent for failing to address the problem adequately in order to provide a reasonably safe shopping environment.

We do not believe this case is like those in which slip and fall accidents are caused by foreign substances. In those cases, objects on the floor such as grapes, spilled rice, and the traditional banana peel are at issue. See, e.g., Joye v. Great Atl. & Pac. Tea Co., 405 F.2d 464 (4th Cir. 1968) (banana peel); Simmons v. Winn-Dixie Greenville, Inc., 457 S.E.2d 608 (S.C. 1995) (grape); Pennington v. Zayre Corp., 165 S.E.2d 695 (S.C. 1969) (plastic bag); Wimberly v. Winn-Dixie Greenville, Inc., 165 S.E.2d 627 (S.C. 1969) (3-2 decision) (rice); see also Hunter v. Dixie Home Stores, 101 S.E.2d 262, 265-67 (S.C. 1957) (surveying cases involving beets, strawberries, popcorn, and other vegetable matter). These objects are clearly foreign to the floor. They are normally stored on shelves or displayed in cases above floor level and are located for convenient removal by customers. The trim piece in this case, however, was installed as a semi-permanent fixture to the store's display shelving. It was clearly not intended for removal and was located at floor level. In this way it is quite similar to the floor mats involved in Cook.

This case is also similar to Henderson because that case involved gum balls which, like trim pieces, were not intended for removal by patrons. In this way, both Henderson and this case are distinct from the fruit or vegetable matter cases. Retail stores exist for the singular purpose of selling goods to customers, and therefore the goods must be subject to removal by store patrons. Sometimes, however, this results in a dangerous condition created when a store's customers drop products on the floor. Because this danger is a necessary consequence of the retail business, the South Carolina courts appear to rule that such hazards are reasonable as a matter of law so long as they are remedied when discovered. Thus, where "the defect results from the unauthorized act of another, the storekeeper is held only to reasonable care in the discovery and remedy or removal of it." Richards v. Great Atl. & Pac. Tea Co., 83 S.E.2d 917, 918 (S.C. 1954) (dicta).

7

Any other result would make a storekeeper the insurer of his customers' safety. This policy concern is not present, however, when the danger at issue is not inherent to the business. There, when an unreasonably hazardous condition is created by the proprietor, he breaches his duty of care and is held liable. This was the case in Henderson and Cook, and it is also the case here.

Like the floor mats in Cook, the tendency of these pieces to become dislodged was directly relevant to the legal question of whether Toys had breached its duty to provide reasonably safe premises for its customers. Accordingly, we affirm the district court's evidentiary rulings under Rules 402 and 403. Because South Carolina law does not require evidence that Toys had actual or constructive knowledge of the particular dislodged trim piece in order to be held liable, we also affirm the district court's denial of Toys' motion for judgment as a matter of law and motion for a new trial.

AFFIRMED