16925

CHARLES S. BELUE, Respondent, v. CITY OF GREENVILLE, Appellant

(84 S. E. (2d) 631)

194

*W. H. Arnold, Esq.,* of Greenville, *for Appellant,*

*Clement L. McEachern, Esq.,* of Greenville, *for Respondent,*

November 10, 1954.

LEGGE, Justice.

Respondent, resident owner of the property at the south-west corner of Boyce Springs Avenue and Charlotte Street, in the City of Greenville, South Carolina, brought this action under what is now Section 59-224 of the 1952 Code praying judgment in the sum of $2,500.00 for damage to his said property alleged to have resulted from the installation by the city of curbing and guttering on Charlotte Street and at its junction with Boyce Springs Avenue, whereby excessive surface water was thrown upon respondent's lot. Timely motions for nonsuit and for direction of a verdict were made on the part of the defendant and overruled, and the case was submitted to the jury, which rendered its verdict in favor of the respondent in the sum of $1,200.00. Appellant's motion for judgment notwithstanding the verdict, or, alternatively, for a new trial, was overruled, and this appeal followed.

Paragraphs III, IV and V of the complaint are in the following language:

"III

"The plaintiff states on August 13, 1951 and on September 6, 1951 there came a rain and the surface waters from adjacent property flowed on the land of the plaintiff at such a rapid rate that considerable damage was caused.

"IV

"The plaintiff's lot located at 16 Boyce Springs Avenue, City of Greenville in the aforesaid State received on the aforementioned dates large quantities of surface water which was dumped on the lot by a drainage ditch which overflowed during a heavy rain causing washes, ditches and leaving deposits of dirt and debris and water on the lot after a heavy

rain is from three to six inches deep and it is the duty of the City of Greenville to install proper drains for excessive surface water.

"V

"The plaintiff had the premises fixed to expel excessive surface water that drained down Charlotte Street which is adjacent to the plaintiff's lot and did expel the said surface water but the City of Greenville installed curbing and guttering at Charlotte Street and Boyce Springs Avenue and in the installation did destroy the work of the plaintiff and as a result of the destruction by the employees of the City of Greenville did cause excessive surface water to be dumped on the land of the plaintiff. The plaintiff has been damaged in the sum of $2,500.00".

The answer, after a general denial, alleged as separate defenses:

(a) That plaintiff's property consists of a low lot affording a natural drain from the surrounding area, as the plaintiff knew or should have known when he bought it, and that his damage, if any, resulted from acts of others for which defendant is not liable;

(b) That the curb and gutter in Charlotte Street was installed at the request of certain property owners along said street, and is beneficial to plaintiff's property because it tends to restrict the water from it; and

(c) That the two rains referred to in the complaint were unprecedented and were acts of God for which the defendant is not liable.

Charlotte Street, the roadway of which is surfaced with tar and gravel runs downgrade from Haviland Street northward to Boyce Springs Avenue, a distance of about 800 feet, the grade being approximately eight per cent. Respondent's lot is about four feet below the level of Boyce Springs Avenue. There are one or more springs near the junction of Charlotte Street and Boyce Springs Avenue, and water from them is, and was prior to the installation of the curbs

and gutters on Charlotte Street, carried under Charlotte Street and westward under respondent's lot and the lot adjoining it to the west by a pipe 18 inches in diameter to an open drainage ditch. This pipe had been laid prior to respondent's acquisition of his lot, and not by the city. At the foot of Charlotte Street the city installed, with the curbing and guttering, two catch basins of standard type approximately 30 inches wide, set into the curb. Prior to the installation of the curb and gutters which was in the spring or summer of 1951, there had been an open ditch on Charlotte Street.

Appellant's contention (Exception I) that the trial court erred in allowing testimony to show that surface water from the streets came upon respondent's property, is without merit. It is apparently based upon the fact that paragraph III of the complaint alleged that the surface waters "from adjacent property" flowed on respondent's land. The quoted paragraphs of the complaint show the gist of the cause of action to be the flooding of plaintiff's land as the result of the installation of curbs and gutters on Charlotte Street; and it is immaterial whether the water came upon plaintiff's land directly from Charlotte Street or from adjacent lots, if the flooding resulted from that cause.

Appellant also charges error in the refusal of the trial court to direct a verdict in its favor upon the ground that the testimony showed conclusively that the two rains referred to in the complaint were unprecedented, and therefore acts of God. (Exception IV.) It is undisputed that the rains of August 13 and September 6, 1951, were the heaviest during any twenty-four-hour period between January 1, 1951, and September 30, 1953. On August 13, 3.71 inches fell within two hours: and on September 6, the rainfall was 6.2 inches, of which 4.75 inches fell within three hours. But granting that such rains were exceptional, or even unprecedented, such fact alone would not be sufficient to support here the defense of "act of God".

"The principle embodied in all of the definitions is that the act must be one occasioned exclusively by the violence of nature and all human agency is to be excluded from creating or entering into the cause of the mischief. When the effect, the cause of which is to be considered, is found to be in part the result of the participation of man, whether it be from active intervention or neglect, or failure to act, the whole occurrence is thereby humanized, as it were, and removed from the operation of the rules applicable to the acts of God." 2 Words and Phrases, p. 176, citing *Mincey v. Dultmeier Mfg. Co.,* 1937, 223 Iowa 252, 272 N. W. 430.

And so it has been held that a rainstorm, as the result of which large quantities of water, which could not escape through a natural water-course because of its obstruction by a city, inundated contiguous land, was not an "act of God". *Mitchell v. City of Santa Barbara,* Cal. App. 1941, 120 P. (2d) 131.

And it is well settled in this State that an act of God must be the sole cause of the injury in order to avail as a defense. *Montgomery v. National Convoy & Trucking Co.,* 186 S. C. 167, 195 S. E. 247; *Hutchinson v. City of Florence,* 189 S. C. 123, 200 S. E. 73; *Morgan v. Greenville County,* 189 S. C. 368, 1 S. E. (2d) 144; *Baynham v. State Highway Dept.,* 181 S. C. 435, 187 S. E. 528.

There was abundant evidence in the instant case to carry to the jury the issue of whether the installation by the city of the curbing, gutters and catchbasins on Charlotte Street was a contributing factor in the flooding of respondent's land.

Appellant contends that the undisputed evidence showed that respondent's lot was the lowest in the area; that a live stream had run through the lot, and had been piped under it by some party other than appellant prior to respondent's purchase of the property; that

appellant has the right to use a live stream to carry sur-
face water from its streets; and that the trial judge should
therefore have directed a verdict in its favor. But respondent
testified that the driainage of his lot was adequate until the
city installed the curbing and gutters on Charlotte Street.
To quote briefly from his testimony:

"The Court: Let us know further what was the condition
before the curbing and guttering was put down. A. Before
it was put down I had a good drain from my yard, that
taken care of it, a ditch came out of Charlotte into my yard,
had a good drain, cement drain that took care of it, and
it was clean.

"Q. Where did the ditch go? A. Under my yard; and
when they came and put the curbing and guttering naturally
had to build up, and build up sidewalks for the future they
say; and when they built the curb and gutter they filled in
my drain and put another up in the street not large enough
to take care of the water, and all the water that comes down
Charlotte Street comes into my yard and washes debris
into my yard."

It would serve no useful purpose to discuss the issue of
the liability of a municipality, apart from statute, for dam-
age resulting from the construction of a drainage system
whereby surface water is thrown into a natural watercourse
in such quantity as to cause it to overflow its banks. The
present action is laid under our statute, Code 1952, § 59-224,
which reads as follows:

"Whenever, within the boundaries of any municipality, it
shall be necessary or desirable to carry off the surface water
from any street, alley or other public thoroughfare along
such thoroughfare rather than over private lands adjacent
to or adjoining such thoroughfare, such municipality shall,
upon demand from the owner of such private lands, provide
sufficient drainage for such water through open or covered
drains, except when the formation of the street renders it
impracticable, along or under such streets, alleys or other
thoroughfare in such manner as to prevent the passage of

such water over such private lands or property. But if such drains cannot be had along or under such streets, alleys or other thoroughfare, the municipal authorities may obtain, under proper proceedings for condemnation as for highways on payment of damages to the landowner, a right-of-way through the lands of such landowner for the necessary drains for such drainage."

The issue is thus resolved against appellant's contention by the very language of the statute.

In *Holliday v. City of Greenville,* 224 S. C. 207, 78 S. E. (2d) 279, where the facts were not substantially different from those of the instant case, Chief Justice Baker, speaking for the court, fully discussed the liability imposed upon the municipality under the Code provisions above referred to. As was pointed out there, proof of negligence, in the usual sense of the word, in the design or construction of the drainage project is not an essential ingredient of the damaged landowner's cause of action. If, after demand, the city fails to provide sufficient drainage, along or under the street on which the drainage work is done to prevent the passage of its surface water over the landowner's property, and damage thereto results, his cause of action is complete. The city's alternative to such liability is condemnation.

Appellant contends that under the pleadings and the rulings of the presiding judge during the trial respondent was limited to recovery of damages resulting only from the two rains mentioned in the complaint, and that the presiding judge erred in charging the jury that in estimating the damages they could consider the likelihood of flooding in the future. Paragraph III of the complaint, it will be noted, makes no reference to any flooding other than that during the rains of August 13 and September 6, 1951. Paragraph IV, the language of which as shown in the printed transcript is not quite clear, seems still limited to the rains "on the aforementioned dates". Paragraph V is in more general

language, alleging that the city, in the course of installing curbing and guttering, destroyed the work which respondent had done to expel excessive surface water, and as a result of such destruction "did cause excessive surface water to be dumped on the land of the plaintiff". Prospective damages are not specifically alleged, and in view of the trial proceedings to which we shall refer it is not necessary for us to decide whether such damages are reasonably inferable from the language of the complaint just quoted.

Early during the direct examination of the respondent, the record shows the following:

"Q. State what the City did when they installed the curbing and guttering and what effect it had on you? A. When they installed it they put the water all in my yard, washed everything in my yard, I don't know how many loads of red mud; when it comes down Charlotte anywhere, don't go anywhere but in my yard, washes my yard and all muddy across my yard, and the mud ankle deep, most any rain the gutter gets full of water and when it would get full it would come in my yard—

"By Mr. Arnold: I object to his testimony about 'most any rain'. His complaint is predicated on two instances, and I move to strike it out. He can testify as to the two instances, August and September, 1951".

While the transcript does not indicate the court's ruling on the objection, it appears that the objection was sustained, because a little later during the direct examination of the respondent, the following occurred:

"Q. You still have the same problem when it rains? A. Yes, sir; water coming over the curbing.

"By Mr. Arnold: He is limited to these two instances, your Honor struck it out a while ago. He can testify as to these two dates in the complaint, but I object to any other testimony, he is limited to the two specific dates.

"The Court: Yes, sir. Stick to that, Mr. McEachern."

And still later:

"Q. You have other trouble out of regular rains? A. Yes, sir.

"By Mr. Arnold: I object to that.

"The Court: Just the two rains they complain of; remember that, gentlemen, the two rains they complain of, damages due to these two rains on these two occasions  *  *  *".

But later, a real estate dealer who testified for the respondent was allowed, without objection to say that in his opinion there was danger of overflow from surface water coming from the curbing and gutters, which in the opinion of the witness seriously affected the value of respondent's property; and that "it is impossible to say what a prospective purchaser would pay for it knowing the danger of this overflowing existing". And later this witness under cross examination testified that the drainage situation could depreciate the value of the property further.

Later, during the direct examination of another witness for the respondent, the following occurred:

"Q. After they took the drain out and installed the curbing and guttering and put the embankment there you and Mr. Belue have had trouble ever since?·A. That is right.

"Q. Does it take exceedingly big rains to create flood conditions, or any rain? A. Any good rain will do it.

"By Mr. Arnold: His damage is limited to the two set forth in the complaint.

"The Court: Permanent damages could be reflected by reason of future rains; he is suing for permanent damages".

It will thus be seen that as the trial progressed the court viewed respondent's cause of action as embracing not only the damage caused by the two rains specifically referred to in the complaint, but also depreciation of the value of the property by reason of the likelihood of flooding in the future. This view was expressly stated by the presiding judge in his charge to the jury; and if appellant construed it as a misstatement of the issues, the

matter should have been brought to the attention of the trial judge at that time. This not having been done, appellant's present contention cannot now be considered. *Coleman v. Lurey,* 199 S. C. 442, 20 S. E. (2d) 65; *Drayton v. Industrial Life & Health Ins. Co.,* 205 S. C. 98, 31 S. E. (2d) 148; *Blackwell v. Prudential Ins. Co. of America,* 206 S. C. 320, 34 S. E. (2d) 57.

In the light of these conclusions the question of whether respondent could recover for damages resulting from the rain of August 13, 1951, because of the absence of proof that the demand contemplated by the statute had been made prior thereto, becomes of no importance. Under the issues as submitted to the jury, his recovery includes prospective as well as past damages. By the same token, the verdict does not appear excessive.

Finally, appellant contends that the trial judge erred in not granting its motion for an order declaring a mistrial, upon the ground that respondent's counsel persisted in asking his witnesses leading questions. During the examination of respondent's witnesses, counsel for appellant interposed frequent objections to the form of the questions asked by respondent's counsel; and these objections were, in most instances, sustained, the court cautioning opposing counsel against leading his witnesses. Even where the trial court has permitted leading questions, reversal for that cause rarely follows, and then only when it appears that the judicial discretion within which such matters appropriately rest, has been abused, and that prejudice has resulted. *State v. Marchbanks,* 61 S. C. 17, 39 S. E. 187; *Koon v. Southern R. Co.,* 69 S. C. 101, 104, 48 S. E. 86; *State v. Stockman,* 82 S. C. 388, 64 S. E. 595; *State v. Lyles,* 210 S. C. 87, 41 S. E. (2d) 625. No such showing is made here.

Affirmed.

Stukes, Taylor, and Oxner, JJ., and G. Badger Baker, A. A. J., concur.