23463

Murriel M. MEADOWS and James Meadows, Respondents-Appellants v.
HERITAGE VILLAGE CHURCH AND MISSIONARY FELLOW-
SHIP, INC., a/k/a PTL, PTL Club, PTL Television Network and PTL
Enterprises, Appellants-Respondents.

(409 S.E. (2d) 349)

Supreme Court

*Forrest C. Wilkerson,* of *Roddey, Carpenter & White, P.A.,*
Rock Hill, *for appellants-respondent.*

*Brian C. Wilson,* Fort Mill, *for respondents-appellants.*

Heard April 22, 1991.

Decided Aug. 12, 1991.

TOAL, Justice:

This is a premises liability action. Appellant Heritage Village Church and Missionary Fellowship, Inc. (PTL) asserts that the trial court erred in refusing to grant its motion for judgment notwithstanding the verdict on the grounds (1) that it owed no duty to respondent (Meadows), and (2) that Meadows was contributorily negligent and assumed the risk of her injuries. We agree and reverse.

## FACTS

Meadows arrived at PTL on November 19, 1986. It began raining the night of November 19th and continued to rain throughout the 20th. That day, Meadows dropped her sisters off at the Grand Hotel and proceeded to park her car in a distant parking lot. Since the gravel path back to the hotel was flooded, Meadows decided to cross the wet grass back to the hotel. Crossing the grass was the shortest way to the hotel, but there were at least two other ways: a paved driveway and a sidewalk.

While attempting to cross the grass, Meadows fell and injured her back. Upon recovering sufficiently, Meadows continued on to the Grand Hotel. There, she filed a "Security/EMF Referral Form," pursuant to which she went to Piedmont Medical Center. At the hospital, Meadows was x-rayed and told there was a problem with the cervical position of her neck.

Meadows remained at PTL until November 22, 1986, when she drove back home to Macon, Georgia. She was not seen by a doctor until April 1987. Since that time, she has incurred $19,235.15 in medical expenses.

On November 17, 1988, Meadows brought suit against PTL, seeking actual and punitive damages. At trial, Meadows testified that she was prohibited from working at her business, that she had incurred additional business expenses, that she had lost wages as a result of her debility, and that she had incurred substantial medical bills. The jury found for Meadows and awarded her actual damages of $25,000.00. This appeal ensued.

## LAW/ANALYSIS

I. *Duty to Warn*
PTL contends that Meadows failed to meet her burden of

proof of negligence because PTL only owed Meadows a duty to warn of hidden, latent dangers and that the wet grass was an open and obvious danger; therefore, since Meadows could not show that there was a latent dangerous condition which caused her injury, the trial court should have granted its motion for judgment notwithstanding the verdict.

On appeal from an order granting a motion for judgment *non obstante veredicto*, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing the motion. *Rewis v. Grand Strand General Hosp.*, 290 S.C. 40, 348 S.E. (2d) 173 (1986); *Graham v. Whitaker*, 282 S.C. 393, 321 S.E. (2d) 40 (1984). A motion for judgment *non obstante veredicto* should not be granted if the evidence is susceptible to more than one reasonable inference. *Felder v. K-Mart Corp.*, 297 S.C. 446, 377 S.E. (2d) 332 (1989); *Graham, supra; Gallman v. American Employers' Insurance Co.*, 272 S.C. 369, 252 S.E. (2d) 124 (1979).

Although the operator of a parking lot is not an insurer of the safety of those who use the lot, reasonable care must be used by the operator to keep the premises used by invitees in a reasonably safe condition. *Felder, supra; Moore v. Levitre*, 294 S.C. 453, 365 S.E. (2d) 730 )1988); *Abeles v. Great Atlantic & Pacific Tea Co.*, 244 S.C. 508, 137 S.E. (2d) 604 (1964); *Bruno v. Pendlton Realty Co.*, 240 S.C. 46, 124 S.E. (2d) 580 (1962). The degree of care required must be commensurate with the particular circumstances involved, including the age and capacity of the invitee. *Graham, supra.*

*Henderson v. St. Francis Community Hosp.*,— S.C. —, 399 S.E. (2d) 767 (1990).

In *Henderson*, this Court reversed the Court of Appeals and allowed the plaintiff, who had slipped on a sweet gum ball in a hospital parking lot, to recover. *Henderson* is distinguishable from this case. In *Henderson*, the hospital had been warned by a landscape architect firm that the sweet gum trees were undesirable because they caused dangerous accumulation of debris. The hospital, however, did not correct the situation. Here, there is no evidence that PTL knew or should have known that either the gravel path or the grass were dangerous.

*Henderson* also differs from this case because the alleged danger—the sweet gum ball—actually caused Henderson's injuries. In this case, it is unclear what Meadows contends was the source of her injuries. She blames the flooded gravel path in her complaint; however, even if the gravel path was dangerous, her injuries were caused by the wet grass. The question, then, is whether PTL owed Meadows a duty to warn her of the danger presented by wet grass. We hold that PTL had no duty to warn Meadows, its invitee, about the wet grass because it was a natural condition, the peril of which was obvious. In contrast, a latent defect is one which an owner has, or should have, knowledge of, and of which an invitee is *reasonably* unaware. It is one which a reasonably careful inspection will not reveal. *Callander v. Charleston Doughnut Corporation,* — S.C. —, 406 S.E. (2d) 361 (1991).

In *Callander,* we adopted Restatement (Second) of Torts § 343(A) (1965) which provides that a possessor of land is not liable to his invitees for physical harm to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. Since the only conclusion which could have been reached is that the wet grass constituted an open and obvious danger rather than a latent or concealed one, the trial judge should have granted PTL's motion for judgment notwithstanding the verdict, unless plaintiff has shown that PTL should have anticipated the harm plaintiff suffered. *See also, Neil v. Byrum,* 288 S.C. 472, 343 S.E. (2d) 615 (1986).

Meadows did not show that PTL could reasonably have foreseen that she would choose to try to cross the wet grass instead of using one of the other ways back to the hotel. While Meadows argues that crossing the grass was necessary because PTL deprived her of any reasonable alternative, her own expert testified that there were other routes back to the hotel. In addition, Meadows could have looked for another parking space or simply have driven back to the hotel; however, instead of choosing a different route, Meadows took a calculated risk for convenience's sake. Now, she seeks to re-

cover for the alleged danger of the road not taken.[1] We find that the only inference to be drawn from the evidence is that PTL did not owe Meadows a duty to warn.

## II. *Assumption of Risk/Contributory Negligence*

PTL also argues that, even if the wet grass was a dangerous condition, Meadows was negligent and assumed the risk of injury and was contributorily negligent in walking on it. By choosing an unauthorized and unforeseeable alternative to the gravel path, even though safer alternatives were available, Meadows assumed the risk of her injuries. In choosing between what was dangerous and what was not and between what was convenient and what was not, she took a calculated risk that she could cross the grass. *See, Senn v. Sun Printing Co.*, 295 S.C. 169, 367 S.E. (2d) 456 (Ct. App. 1988). When asked if there was anything wrong with the area, Meadows admitted, "It was wet." (Tr. p. 28, lines 10-11). Moreover, during Meadows' testimony, the following colloquy also took place:

Q. This is repetitious but I want to make sure I understand your testimony concerning the area where you walked. You walked on a wet grassy area that there was nothing unusual about?

A. Nothing unusual that I remember.

Q. Nothing dangerous or perilous about it that you remember?

A. If I had thought there was something dangerous or perilous about it, I would not have gone that direction.

Q. So, the answer to my question is no. There was nothing dangerous or perilous about it; is that correct?

A. *Except for the water and the grass.*

(Tr. p. 40, lines 1-12) (emphasis added).

---

[1] I shall be telling this with a sigh
Somewhere ages and ages hence:
Two roads diverged in a wood, and I—
I took the one less travelled by,
And that has made all the difference.

Frost, Robert. "The Road Not Taken." *Collected Poems of Robert Frost.* New York: Halcyon House, 1939, p. 131.

This illustrates that the requirements for assumption of the risk set forth in *Senn v. Sun Printing Co., supra,* have been met. *See also,* West's S.C. Digest *Negligence* Key No. 105. Meadows (1) had knowledge that the grass was wet, (2) admitted that the water and grass were dangerous and perilous, (3) appreciated the nature and extent of the danger, and (4) voluntarily exposed herself to the danger. The only reasonable inference to be drawn from the evidence is that Meadows freely and voluntarily exposed herself to a known danger which she understood and appreciated. Accordingly, we find that Meadows was contributorily negligent and assumed the risk of her injuries.

We hold, therefore, that the circuit court should have granted PTL's motion for judgment notwithstanding the verdict because PTL owed no duty to warn Meadows about wet grass and because Meadows was contributorily negligent and assumed the risk of her injuries.

In light of our disposition of this case, we need not reach the remaining exceptions.

Reversed.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.