**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JEAN CLAYTON,
<u>Plaintiff-Appellant,</u>

v.

No. 95-2268

AUTOQUIP CORPORATION, a subsidiary
of Miner Enterprises, Incorporated,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-94-742-3-19)

Argued: May 8, 1996

Decided: July 10, 1996

Before MURNAGHAN, NIEMEYER, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Daniel Kassel, SUGGS & KELLY, P.A., Columbia,
South Carolina, for Appellant. Harold Simmons Tate, Jr., SINKLER
& BOYD, P.A., Columbia, South Carolina, for Appellee. **ON
BRIEF:** Robert W. Buffington, SINKLER & BOYD, P.A., Colum-
bia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Kenneth Clayton, an experienced maintenance mechanic, was killed when a scissor-style hydraulic lift underneath which he was working fell on top of him. His wife, Jean Clayton, sued the lift's designer and manufacturer, Autoquip Corporation, Inc., in federal court, alleging negligence, breach of implied warranty and strict liability. Following discovery, the district court found that Clayton, who had failed to use properly the company-provided safety leg and ignored a co-worker's warning, had assumed the risk of his injuries. The court therefore granted summary judgment to Autoquip.

On appeal, Jean Clayton maintains that the district court erred in its finding of assumption of risk. We disagree. Under South Carolina law, in the absence of express assumption of risk, the proper inquiry for an implied assumption is whether the plaintiff "understood and appreciated a known danger created by the defendant, and then freely and voluntarily exposed himself to it."[1] Mayes v. Paxton, 437 S.E.2d 66, 70 (S.C. 1993). The affirmative defense of assumption of risk has four basic elements: (1) the plaintiff had knowledge of the facts constituting a dangerous condition; (2) the plaintiff knew the condition was dangerous; (3) the plaintiff appreciated the nature and extent of the danger; and (4) the plaintiff voluntarily exposed himself to the danger. Meadows v. Heritage Village Church and Missionary Fellowship, Inc., 409 S.E.2d 349, 352 (S.C. 1991); Senn v. Sun Printing Co., 367 S.E.2d 456, 458 (S.C. Ct. App. 1988). The inquiry is subjective,

_____

[1] Because the matter is in federal court on diversity grounds, the substantive law of the forum state--here, South Carolina--applies. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). However, state law does not govern a federal court's determination of whether the evidence is sufficient to withstand a summary judgment motion because Federal Rule of Civil Procedure 56(c) directly applies. See General Acc. Fire and Life Assur. Corp. v. Akzona, Inc., 622 F.2d 90, 93-94 n.5 (4th Cir. 1980).

Litchfield Co. of S.C. v. Sur-Tech Inc., 345 S.E.2d 765, 766 (S.C. Ct. App. 1986), with the burden of proof on the defendant, Hoffman v. Greenville County, 129 S.E.2d 757, 760 (S.C. 1963).

Here, the material facts are not in dispute. In his 16 years as a maintenance mechanic at a hospital in Columbia, South Carolina, Clayton had worked on the lift before. At the time of the tragedy, he was attempting to remove two leaking hydraulic cylinders for repair.[2] Autoquip supplied a safety leg for use in securing the lift during repairs and a service manual containing instructions on proper use of the safety device.[3] The sides of the lift displayed a warning that safety devices should be in place before work was performed under the hydraulic lift.

Clayton did not place the safety leg in its intended spot on the day he died. Instead he raised the lift, then secured it by placing the safety leg along one side of the lift and a heavy piece of timber along the opposite side. Both Clayton and Anthony Shaw, a maintenance assistant, got under the lift to perform the work. Shaw held the punch while Clayton hit the clevis pins with a hammer from inside the lift.[4] After Clayton had loosened one pin, Shaw told him that he felt the lift move. Clayton responded that he wanted to give the pin a few additional blows before they retrieved the forklift that they had brought to support the lift while they removed the cylinders. He instructed Shaw to get another tool. Shaw got up, turned and saw the lift fall onto Clayton.[5]

_____

[2] In order to remove the hydraulic cylinders, a person would have to use a hammer and a punch to drive out the clevis pins which secured the bottom end of each cylinder. The person would have to raise the lift, block it and crawl underneath it in order to perform the necessary work.

[3] The manual does not offer other acceptable ways to block the lift in lieu of the safety leg nor discuss the proper method of removing the lower clevis pins.

[4] Although there was conflicting evidence about the proper way to remove the clevis pins, that dispute is immaterial.

[5] Jean Clayton has conceded that her husband "understood that working under a heavy lift could be dangerous." She has also acknowledged that Shaw warned him that the lift had moved and that Shaw stated that Clayton "anticipated hitting the pin again." Shaw's testimony supports these statements.

3

Viewing the evidence and drawing all inferences in the appellant's favor as we must, United States v. Diebold, 369 U.S. 654, 655 (1962) (per curiam); Hinkleman v. Shell Oil Co., 962 F.2d 372, 375 (4th Cir. 1992), we find that Clayton understood that a risk existed, yet chose to remain under the lift in order to hit the pins again before using the forklift. He circumvented the safety device, defied printed warnings and ignored the specific admonition of a co-worker. We discern no evidence in the record that Clayton had no reasonable alternative course of conduct. See Wallace v. Owens-Illinois, Inc., 389 S.E.2d 155, 158 (S.C. Ct. App. 1989) (stating that plaintiff's assumption of risk is not voluntary if defendant's wrongful conduct leaves no reasonable alternative course of conduct to avoid harm). Nor do we find any indication that Clayton disbelieved Shaw's assertion that the lift shifted or that Clayton was somehow blocked or prevented from moving. Even assuming that Clayton thought he had secured the lift and the design of the lift "created a trap," we agree with the district court that Clayton appreciated and voluntarily assumed whatever risk existed.

While we recognize that assumption of the risk is usually a question of fact for the jury that becomes a matter of law for the court "only in very rare cases," McKinney v. Woodside Cotton Mills, 166 S.E. 499, 500 (S.C. 1932); accord Small v. Pioneer Mach. Inc., 450 S.E.2d 609, 615 (S.C. Ct. App. 1994), we also know that no civil action or issue is immune to summary adjudication, Bruce v. Travelers Ins. Co., 266 F.2d 781, 787 (5th Cir. 1959) (citation omitted).**6** In South Carolina, "[t]he court may declare that the plaintiff assumed the risk as a matter of law only if the sole reasonable inference to be drawn from the evidence is that the plaintiff freely and voluntarily exposed himself to a known danger which he understood and appreciated." Wallace, 389 S.E.2d at 158. Here, that test has been met.**7**

_____

**6 See also First Nat'l Bank of Ariz. v. Cities Serv. Co.**, 391 U.S. 253, 259 (1968) ("the question of whether summary judgment is appropriate in any case is one to be decided upon the particular facts of that case").
**7** Because Appellant has conceded that she waived her claim that the South Carolina Supreme Court's rejection of contributory negligence in 1991 modified the assumption of risk defense by failing to raise it before the district court, that issue is no longer before us.

4

Because there is no genuine issue as to any material fact and Auto-quip is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(c); Miller v. Federal Deposit Ins. Co., 906 F.2d 972, 973 (4th Cir. 1990), we affirm the district court's order.

AFFIRMED

5