491 S.E.2d 571

**Alice CREECH, Respondent,**

v.

**SOUTH CAROLINA WILDLIFE AND MARINE RESOURCES
DEPARTMENT and Charleston County, Appellants.**

**No. 24677.**

Supreme Court of South Carolina.

Heard March 18, 1997.

Decided Aug. 11, 1997.

Re-issued Aug. 25, 1997.

Rehearing Denied Sept. 19, 1997.

Matthew H. Henrikson, of Barnwell, Whaley, Patterson and Helms, LLC, Charleston, for Appellants.

Daniel W. Williams, of Bedingfield & Williams, Barnwell, for Respondent.

TOAL, Justice:

Appellants South Carolina Wildlife and Marine Resources Department ("Wildlife Department") and Charleston County ("County") appeal the verdict in favor of Respondent Alice Creech, arguing, *inter alia*, that the trial court erred in failing to direct a verdict for Wildlife Department and County. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Respondent Alice Creech fell off a public dock at Steamboat Landing in Charleston County. The dock had railing on only one side, and Creech fell from the other side. She fell approximately ten feet and suffered numerous injuries.

Creech sued Wildlife Department and County under the South Carolina Tort Claims Act, S.C.Code Ann. §§ 15–78–10 to –190 (Supp.1996). She alleged that the defendants were negligent in failing to provide rails on both sides of the dock. Wildlife Department and County defended primarily on the bases that: (1) County was entitled to discretionary immunity; (2) because the condition at issue was open and obvious, County had not breached any duty to Creech, who was a public invitee; (3) Creech's injuries resulted from her own negligence rather than from any negligence of the defendants; and (4) the dock was designed as a boating dock rather than as a fishing pier, so erecting a second rail would have been inappropriate.

The jury returned a verdict in favor of Creech, finding her 49% negligent, County 16% negligent, and Wildlife Department 35% negligent. County and Wildlife Department now appeal.

## LAW/ANALYSIS

### A. COUNTY'S APPEAL—DIRECTED VERDICT ISSUE

County argues the trial court erred in failing to grant it a directed verdict. We disagree.

#### 1. Discretionary Immunity

County first argues that its placement of a single rail on the dock at Steamboat Landing was a discretionary decision and that, therefore, County was immune from suit under S.C.Code Ann. § 15–78–60(5) (Supp.1996). It argues that it was entitled to a directed verdict based on section 15–78–60(5). We disagree.

Section 15–78–60(5) provides that a governmental entity "is not liable for a loss resulting from . . . the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee." This discretionary act immunity constitutes an affirmative defense that the governmental entity has the burden of proving. *Strange v. South Carolina Dep't of Hwys. & Pub. Transp.*, 314 S.C. 427, 445 S.E.2d 439 (1994)(citing *Niver v. South Carolina Dep't of Highways & Pub. Transp.*, 302 S.C. 461, 395 S.E.2d 728 (Ct.App.1990)). Specifically, the governmental entity must show that when faced with alternatives, it weighed competing considerations and made a conscious choice, and that it used accepted professional standards to make that choice. *Foster v. South Carolina Dep't of Hwys. & Pub. Transp.*, 306 S.C. 519, 413 S.E.2d 31 (1992).

As noted above, County argues made a conscious choice to erect only one rail and that, therefore, it was entitled to a directed verdict. The standard of review as regards the refusal to grant a directed verdict is well established:

In ruling on motions for directed verdict and JNOV, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions and to deny the motions where either the evidence yields more than one inference or its inference is in doubt. The trial court can only be reversed by this Court when there is not evidence to support the ruling below.

*Strange*, 314 S.C. at 429–30, 445 S.E.2d at 440 (citations omitted).

In arguing that it was entitled to a directed verdict because of its discretionary immunity defense, County relies solely on the testimony of James Rogers as well as certain exhibits to show it weighed the alternatives and made a conscious decision not to erect an additional rail on the dock. Rogers, the director of public works for Charleston County, testified concerning several memoranda and letters relating to a decision regarding safety rails at Steamboat Landing. Among other evidence, there is: (1) a letter to the public works construction superintendent noting a problem with the lack of safety rails at the dock at Steamboat Landing; (2) a memo from Rogers authorizing the construction superintendent to contact the Wildlife Department concerning the guardrail problem so that County and Wildlife Department could discuss the issue and make recommendations for improvement; (3) a letter from Rogers to Representative Holt, the Chairman of the Wildlife and Environmental Committee, stating "Charleston County has recommended that handrails be placed in reference piers and boat ramps," including Steamboat Landing. Rogers concluded that after study of the issue, a decision "obviously" was made to erect only one handrail at Steamboat Landing. Importantly, however, Rogers repeatedly testified that he "had no independent recollection of any discussion in 1987 concerning boat rails being placed on the pier at Steamboat Landing." Rogers admitted he was piecing together what *probably* happened based on his review of the memoranda and correspondence. The cost estimates for erecting rails at Steamboat Landing assume rails on both sides.

This evidence does not show a conscious choice by County to erect only one guardrail at Steamboat Landing. We do not

think one *could* infer, based on the evidence, that the issue of how many safety rails to erect was examined and an informed decision was made to erect only one rail at Steamboat Landing; any discretionary decision that was made concerned whether to erect rails *at all,* not whether to erect one rail or two. James Rogers's statement that a decision "obviously" was made to erect only one guardrail based on the fact that only one rail was erected is mere conjecture about what might have happened, not real evidence of an exercise of discretion. The trial judge did not err in refusing to grant a directed verdict based on S.C.Code Ann. § 15-78-60.

### 2. "Open and Obvious" Hazard to Public Invitee

County next argues that the trial judge should have granted it a directed verdict based on the fact the lack of a guard rail was an open and obvious condition against which Creech, a public invitee, should have been able to protect herself. We disagree.

Neither party disputes Creech's status as a public invitee. In *Callander v. Charleston Doughnut Corp.,* 305 S.C. 123, 406 S.E.2d 361 (1991), this Court adopted the Restatement approach to premises liability as relates to an invitee. Restatement (Second) of Torts § 343A (1965), which is the principal section at issue here, provides:

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Comment e to section 343A elaborates on the rule stated in the section itself. It states:

> In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of

ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

Based on this language, County argues that the absence of a rail on one side of a dock is an obvious condition that an invitee should notice and that Creech made an informed decision about whether to stay on the dock even though it had a rail on only one side.

Creech argues, however, that even assuming the danger was open and obvious, County should have "anticipate[d] the harm despite such knowledge or obviousness." We agree, finding that County actually did anticipate the kind of harm that occurred.

*Callander,* 305 S.C. 123, 406 S.E.2d 361, and *Meadows v. Heritage Village Church,* 305 S.C. 375, 409 S.E.2d 349 (1991), are the seminal South Carolina cases interpreting section 343A. In *Meadows,* the plaintiff brought a negligence action against Heritage Village Church ("PTL") because of injuries she sustained when she slipped on some wet grass while walking to her hotel. The jury awarded the plaintiff $25,000. On appeal, PTL argued that the plaintiff "failed to meet her burden of proof of negligence because PTL only owed [plaintiff] a duty to warn of hidden, latent dangers and that the wet grass was an open and obvious danger." *Id.* at 376–77, 409 S.E.2d at 350.

This Court found that wet grass was an open and obvious danger and that absent a showing by plaintiff that PTL should have anticipated the harm the plaintiff suffered, the trial court should have granted PTL's motion for JNOV. Because the plaintiff had other options—for example, she could have moved her car closer to the hotel rather than walk across the wet grass or she could have taken other paths provided by PTL—the Court found she had not shown that "PTL could reasonably have foreseen that she would choose to try to cross the wet grass instead of using one of the other ways back to the hotel." *Id.* at 378, 409 S.E.2d at 351. The Court distinguished *Henderson v. St. Francis Community Hospital,* 303

S.C. 177, 399 S.E.2d 767 (1990), partially on the basis that in *Henderson,* the defendant had been warned that the condition ultimately causing the plaintiff's injury was dangerous.

In *Callander,* 305 S.C. 123, 406 S.E.2d 361, the plaintiff was injured when he backed onto a chair at a doughnut shop and the seat of the chair was missing. This Court found the missing seat was not a latent defect in the chair. Nevertheless, it rejected the argument by the doughnut shop that it was entitled to a directed verdict because of the lack of any latent defect. Instead, the Court noted that "[t]he traditional 'no duty to warn of the obvious' rule has been modified in many jurisdictions to hold that an owner is liable for injuries to an invitee, *despite an open and obvious defect, if the owner should anticipate that the invitee will nevertheless encounter the condition, or that the invitee is likely to be distracted." Id.* at 125, 406 S.E.2d at 362 (emphasis added). The Court then adopted Restatement (Second) of Torts § 343A. In holding that the doughnut shop was not entitled to a directed verdict under this standard, the Court found that there was evidence the owner of the doughnut shop knew senior citizens frequently backed onto their chairs and that, therefore, they might not notice a defect in a chair. *Id.* at 126, 406 S.E.2d at 363.

This case is far more like *Callander* than like *Meadows.* Here, there was ample evidence that County had been warned the lack of safety rails could present a danger to people fishing from the dock and could expose County to potential liability. Accordingly, County was not entitled to a directed verdict based on the open and obvious nature of the dangerous condition.

### 3. Comparative Negligence—Plaintiff's Degree of Fault

County next argues it was entitled to a directed verdict because Creech was more than fifty percent negligent as a matter of law. We disagree.

Comparison of a plaintiff's negligence with that of the defendant is a question of fact for the jury to decide. *See, e.g., Ott v. Pittman,* 320 S.C. 72, 80, 463 S.E.2d 101, 106 (Ct.App.1995) (citing trial judge's statement that "because this was a comparative negligence case, even if the plaintiff's

testimony amounted to an admission of negligence, it was a question of fact for the jury to compare the plaintiff's negligence [with that of the defendant]."); *cf. Gruber v. Santee Frozen Foods, Inc.,* 309 S.C. 13, 21, 419 S.E.2d 795, 800 (Ct.App.1992) ("Generally, contributory negligence is a question for determination by the jury. But when the evidence admits only one reasonable inference, it becomes a matter of law for the determination of the court."), *cert. denied,* 1993. A directed verdict is warranted only if the only reasonable inference that may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent.

 Here, evidence was presented suggesting that Creech, County, and Wildlife Department were all negligent. In our view, the jury reasonably could have drawn *many* different conclusions regarding the relative fault of the parties. Under such circumstances, a directed verdict would have been wholly inappropriate. We find no error here.[1]

## B. WILDLIFE DEPARTMENT'S APPEAL—DIRECTED VERDICT

Wildlife Department argues for several reasons that the trial court erred in failing to grant a directed verdict in its favor. To the extent the issues raised by Wildlife Department mirror those raised by County, our holdings above control the disposition of those issues. We shall address each additional issue in turn.

### 1. Lack of Ownership Interest in Steamboat Landing

 Wildlife Department first argues that it owed no duty of care to Creech because it had no ownership or possessory interest in Steamboat Landing at the time of the accident and that, therefore, the trial court erred in failing to grant a directed verdict for Wildlife Department. However, Wildlife

---

1. County and Wildlife Department also appear to argue that each of them was found less negligent than was Creech herself and that it would be unfair to allow Creech to recover from a party when she was more at fault than the party. Our decision in *Nelson v. Concrete Supply Co.,* 303 S.C. 243, 399 S.E.2d 783 (1991), makes clear that if there is more than one defendant, the plaintiff's negligence shall be compared to the combined negligence of *all* defendants. Such a rule mandates that County and Wildlife Department's argument fail.

Department did not raise this issue at trial in its motion for directed verdict. Accordingly, the issue is not properly before this Court. *See, e.g., Smith v. Phillips,* 318 S.C. 453, 458 S.E.2d 427 (1995) (with very limited exceptions, appellate court cannot address an issue unless the issue was raised to and ruled upon by the trial court).

### 2. Design and Construction of the Dock

■■ Wildlife Department next argues the trial court should have granted a directed verdict because there was no evidence it breached any duty in designing and constructing the dock. We disagree.

First, Wildlife Department's argument is premised on the assumption that Steamboat Landing was designed as a boating dock. Although the Record certainly contains evidence that it was indeed designed as a boating dock, there is also evidence that Steamboat Landing was intended for use as a fishing pier, as well as testimony that safety rails are necessary on a fishing pier. In short, based on the evidence, the jury reasonably could have inferred that Wildlife Department was negligent in its design and construction of Steamboat Landing.

■■ It is not this Court's job to agree or disagree with the jury's verdict. Rather, we must determine whether there is evidence in the Record to support the trial judge's ruling on the motion for directed verdict. *Strange,* 314 S.C. at 429–30, 445 S.E.2d at 440 (citations omitted). Here, the Record contains support for the trial judge's decision. We find no error.

### C. JURY CHARGE—DISCRETIONARY IMMUNITY

County next argues that even if it was not entitled to a directed verdict on the issue of discretionary immunity, it was entitled to a jury charge on discretionary immunity under section 15–78–60(5). We disagree.

As noted in Part A.1, the evidence presented regarding the exercise of County's discretion concerned the question whether to erect railing at all, not how many rails to erect. Because the Record contains no evidence from which one could infer that an actual decision was made to put a guardrail on only

one side of the dock, County was not entitled to a jury charge on discretionary immunity.

## D. EVIDENCE—ADMISSION OF GUIDELINES AND MANUALS

Wildlife Department next argues the trial court erred in allowing to be admitted certain manuals and guidelines regarding the construction of docks. Specifically, Wildlife Department contends these manuals were not created until after the construction of the dock at Steamboat Landing and that, therefore, they were irrelevant to the question of Wildlife Department's negligence.

 Although we agree that this evidence was irrelevant, we do not think Wildlife Department (or County) were prejudiced by its admission. Both parties presented ample evidence concerning whether County and Wildlife Department should have placed a second safety rail at Steamboat Landing. The challenged evidence was simply one additional, minor piece of such evidence. Accordingly, we find no reversible error. *See, e.g., Knoke v. South Carolina Dep't of Parks*, 324 S.C. 136, 478 S.E.2d 256 (1996) (no prejudice and, therefore, no reversible error where improperly admitted evidence is cumulative to other evidence in Record).

## E. JURY CONSIDERATION OF SOUTHERN BUILDING CODE

Finally, County argues the trial court erred in submitting to the jury the question whether the Southern Building Code applied to docks and piers in Charleston County. This issue is not preserved.

At trial, County contended that because the Southern Building Code was adopted by ordinance, the question whether it applied to docks and piers was a legal question for the judge's consideration. However, County backtracked on this position considerably, requesting that the judge at least submit the issue to the jury as a question of fact. When the judge submitted the issue to the jury as a question of fact, County did not object to the jury charge.

■ Rule 51 of the South Carolina Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection." *See also, e.g., Belue v. City of Greenville*, 226 S.C. 192, 84 S.E.2d 631 (1954)(refusing to consider on appeal a contention regarding the trial court's jury instruction that was not raised at trial); *Sierra v. Skelton*, 307 S.C. 217, 414 S.E.2d 169 (Ct.App.1992) (where party did not complain about judge's failure to instruct jury on issue, party could not complain on appeal about lack of jury instruction). As best we can discern, County's complaint on appeal about the trial court's error in "submitting the issue to the jury" is a complaint about the jury charge; *i.e.*, the judge should not have charged the jury to determine, as a question of fact, the applicability of the Southern Building Code. Because County did not object to the jury instruction given—and, in fact, *requested* it—this issue is not preserved for our review.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is AFFIRMED.

FINNEY, C.J., MOORE and WALLER, JJ., and Acting Associate Justice GEORGE T. GREGORY, Jr., concur.