THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
William E. Ford,       
Appellant.
 
 
 

Appeal From Dorchester County
Diane Schafer Goodstein, Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-632
Submitted December 1, 2004  Filed 
 December 15, 2004

AFFIRMED

 
 
 
Assistant Appellate Defender Robert M. Pachak, of Columbia, 
 for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, 
 Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and 
 Solicitor Robert Douglas Robbins, of Summerville, for Respondent.
 
 
 

PER CURIAM:  William Ford appeals from his 
 convictions for burglary and kidnapping, arguing the trial court erred in refusing 
 to grant a directed verdict because the State failed to present substantial 
 evidence beyond a reasonable doubt that he was guilty of the offenses.  We affirm. [1]   
 FACTS 
 On January 30, 2002, at approximately 9:30 p.m. in 
 Knightsville, South Carolina, Ford and a friend, John Long, were riding in 
 a sport utility vehicle with the headlights off.  Long was driving the vehicle.  
 Deputy Randy Botten was traveling in the opposite direction when the vehicle 
 ran him off the road.  Botten turned his car around and activated his blue 
 lights to conduct a traffic stop.  The vehicle did not stop and instead increased 
 its speed to about 80 to 85 miles per hour.  Botten followed the vehicle until 
 it turned into a driveway on Central Avenue, near Orangeburg Road, and stopped 
 behind a shed.  Ford and Long jumped out of the vehicle and fled.  Area residents 
 found Long in a yard behind the Countryside Mobile Home Park and he was arrested.  
 Ford ran to Elaine Mizells house on the corner of Central Avenue and Orangeburg 
 Road and stole her brown 1982 Toyota truck.  At 10:47 p.m., a trooper spotted 
 Ford driving Mizells truck with the headlights off and traveling 85 miles 
 per hour in a 25 mile an hour zone.  
 At approximately 9:50 p.m., at 953 Orangeburg Road, 
 the home of David and Jennifer Stover, a man entered their house and carried 
 their daughter, Trinity, outside.  David thought the man was his wife, so 
 he went outside to see if she needed help carrying groceries into the house.  
 Once outside, David did not see his wifes car, but did notice that the interior 
 light was on inside his Mustang.  David then heard Trinity screaming and saw 
 her with a white male.  The man tried to run, but fell over a picnic table 
 and dropped Trinity.  The man then ran towards the woods.  David called 911 
 and his brother-in-law, Donald Short.  
 As Deputy Joli Murray was responding to Davids 911 
 call, a small brown pickup truck drove out of the Countryside Mobile Home 
 Park and nearly hit her car head-on.  She testified the truck was driving 
 erratically.  Short also drove to the Stovers house after receiving the phone 
 call from David.  After leaving the Stovers house, Short drove around looking 
 for a white male and noticed a white male standing next to a small dark Toyota 
 truck, looking toward the Stovers residence.  When he turned in to ask the 
 man what he was doing, the man jumped into the truck.  Short backed into the 
 truck to stop it, but the truck managed to escape.  Short then followed the 
 truck, which did not have its headlights on and was traveling at about 80 
 miles per hour.  Trooper Curtis Burns also pursued the truck until it pulled 
 into a yard.  The driver exited the truck and ran into the woods.  Burns followed 
 the man, who was identified as Ford, and caught him in the woods.  The truck 
 belonged to Mizell.  While Ford was at the detention center he took a breathalyzer 
 test, which determined he was under the influence of alcohol at the time of 
 the collision. 
 The police found footprint impressions in the Mizells 
 and the Stovers yards, so officers took Fords boots from him at the detention 
 center for evidence.  The impressions were consistent with the general design 
 of Fords boots outsole.  SLED Agent Steven Derrick testified Fords boots 
 or another boot with the same combined class characteristics could have left 
 the impressions.  However, he also testified that Fords boot is unique and 
 is sold by Sears exclusively.  Tim Stephenson, an expert in tracking, followed 
 the tracks from the picnic table near the Stovers house to Mizells backyard 
 where her truck was parked.  Stephenson testified the person took the path 
 of least resistance, which is consistent with a person fleeing from the police.  
 Stephenson also testified the tracks indicated that the person was unfamiliar 
 with the area and was in a hurry.  Additionally, he stated it takes about 
 7 minutes and 19 seconds to walk the distance from the picnic table to Mizells 
 truck when walking at a rate of 2.9 miles an hour. 
 Ford moved for a directed verdict at the conclusion 
 of the States case, arguing there was no eyewitness testimony or physical 
 evidence that placed Ford in the Stovers house.  The court denied the motion, 
 finding there was sufficient evidence to be submitted to the jury.  The same 
 motion was renewed at the close of the evidence and again denied.             
 
STANDARD OF REVIEW
 When reviewing a denial of a motion 
 for directed verdict, we use the same standard as the trial court by viewing 
 the evidence and all reasonable inferences in the light most favorable to 
 the non-moving party.  Welch v. Epstein, 342 S.C. 279, 299, 536 S.E.2d 
 408, 418 (Ct. App. 2000).  When a motion for a directed verdict is made 
 in a criminal case where the State relies exclusively on circumstantial 
 evidence, the lower court is concerned with the existence or nonexistence 
 of evidence, not with its weight.  State v. Mitchell, 341 S.C. 406, 
 409, 535 S.E.2d 126, 127 (2000).  The trial judge must submit the case to 
 the jury if there is any substantial evidence which reasonably tends to 
 prove the guilt of the accused, or from which his guilt may be fairly and 
 logically deduced.  State v. Edwards, 298 S.C 272, 275, 379 S.E.2d 
 888, 889 (1989).  We will reverse the trial court only when there is no 
 evidence to support the ruling below.  Creech v. South Carolina Wildlife 
 & Marine Resources Dept, 328 S.C. 24, 29, 491 S.E.2d 571, 573 (1997).     
 
 LAW/ANALYSIS
 Ford argues the trial court erred 
 in refusing to grant a directed verdict because the State failed to present 
 substantial evidence beyond a reasonable doubt that he was guilty of burglary 
 and kidnapping.  We disagree.
 The States evidence against Ford was entirely 
 circumstantial. In such cases, in order to survive a motion for directed 
 verdict, our supreme court has held the State must present substantial 
 circumstantial evidence that reasonably tends to prove the guilt of 
 the accused or from which guilt may be fairly and logically deduced.  
 Edwards, 298 S.C at 275, 379 S.E.2d at 889.  
 The State presented substantial circumstantial 
 evidence that reasonably tended to prove Ford entered the Stovers home 
 and abducted their child, and from which a jury could fairly and logically 
 deduce his guilt of those crimes.  An expert testified that tracks lead 
 from the site where Ford stole Mizells Toyota to the picnic table where 
 he allegedly fell and dropped Trinity.  Another expert testified that 
 footprint impressions found by the Stovers Mustang and behind Mizells 
 house were consistent with Fords boots.  Additionally, Short and a 
 trooper both saw a truck consistent with Mizells stolen Toyota within 
 minutes of the time Ford allegedly walked from the Stovers home to 
 Mizells home and Ford was apprehended after he exited Mizells truck.  
 See State v. Cherry, Op. No. 25902 (S.C.Sup.Ct. filed 
 Nov. 29, 2004) (Shearouse Adv.Sh. No. 46 at 29); cf. Mitchell, 
 341 S.C. at 409, 535 S.E.2d at 127.  The evidence supports the inference 
 that, while fleeing from the police and in need of transportation, Ford 
 opened the door to the Stovers Mustang, as indicated by the lit interior 
 light, entered the Stovers home looking for the keys and abducted Trinity 
 Stover.  Thus, there was ample evidence to warrant submitting the case 
 to the jury. 
 AFFIRMED. 
 ANDERSON, STILWELL, and SHORT, JJ., concur. 

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.